569 S.E.2d 346

**The STATE, Respondent,**

v.

**Edward ROTHSCHILD III, Appellant.**

No. 25518.

Supreme Court of South Carolina.

Heard June 25, 2002.
Decided Aug. 26, 2002.

H. Louis Sirkin and Jennifer M. Kinsley, both of Sirkin, Pinales, Mezibov & Schwartz, LLP, of Cincinnati, OH; and Thomas R. Goldstein, of Belk, Cobb, Infinger & Goldstein, PA, of Charleston, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, and Assistant Attorney General Melody J. Brown; and Solicitor Warren B. Giese, all of Columbia, for respondent.

Justice MOORE.

Appellant was convicted of violating S.C.Code Ann. § 16–13–470(A)(4) (Supp.2001) which prohibits the possession of adulterants intended to defraud a urine drug screening test. We affirm.

## FACTS

Appellant owns two stores in Richland County: Nicki's Novelty Store and Michael's Lingerie and Leather Shop. An ad for Nicki's appeared in an issue of the Free Times Magazine which read: "Taking a drug test? Want to cleanse your system? We carry Readi–Clean, Carbo–Clean Plus, Quick Tabs, One Hour, Zydot, One Hour Klear, Body Flush." On October 18, 1999, in response to the ad, undercover SLED agent Joseph West was dispatched to Nicki's to purchase one of these products. Agent West purchased a product called Zydot from Nicki's [1] after the store clerk assured him this product would allow him to successfully pass a drug test for marijuana. Zydot, which contains no illegal ingredients, is an adulterant used to defeat drug testing of a urine sample.

SLED subsequently seized this product and others like it from Nicki's. Invoices for these products billed to appellant were seized from appellant's other shop.

After a bench trial, appellant was found guilty of violating § 16–13–470(A)(4) which provides:

---

[1]. The Zydot cost $48.29.

(A) **It is unlawful** for a person to:

(1) sell, give away, distribute, or market urine in this State or transport urine into this State with the intent of using the urine to defraud a drug or alcohol screening test;

(2) attempt to foil or defeat a drug or alcohol screening test by the substitution or spiking of a sample or the advertisement of a sample substitution or other spiking device or measure;

**(3) adulterate a urine or other bodily fluid sample with the intent to defraud a drug or alcohol screening test;**

**(4) possess adulterants which are intended to be used to adulterate a urine or other bodily fluid sample for the purpose of defrauding a drug or alcohol screening test; or**

(5) sell adulterants which are intended to be used to adulterate a urine or other bodily fluid sample for the purpose of defrauding a drug or alcohol screening test.[2]

(emphasis added). The trial judge found appellant knowingly possessed the prohibited adulterants and found him guilty under subsection (4).

### ISSUES

1. Does § 16–13–470(A)(4) violate the First Amendment protection of free speech?

2. Does § 16–13–470(A)(4) lack a mens rea element?

3. Was appellant prejudiced by the admission of irrelevant evidence?

---

**2.** This statute further provides:

Intent is presumed if a heating element or any other device used to thwart a drug-screening test accompanies the sale, giving, distribution, or marketing of urine or if instructions which provide a method for thwarting a drug-screening test accompany the sale, giving, distribution, or marketing of urine.

We found this provision unconstitutional and severed it in *Curtis v. State,* 345 S.C. 557, 549 S.E.2d 591 (2001).

4. Should appellant have been granted a directed verdict?

## DISCUSSION

*First Amendment*

■ Appellant contends because the product he was convicted of possessing is not otherwise unlawful, its possession becomes illegal under § 16–13–470 only when one speaks of its use as an adulterant in a commercial setting.[3] He argues § 16–13–470(A)(4) is therefore an "indirect ban" on commercial speech that violates the First Amendment. We disagree.

First, the conduct punishable under subsection (4) is possession of an illegal adulterant; commercial speech is not an integral part of the prohibited activity. Commercial speech may be implicated, however, when, as here, it is used as evidence to prove an element of the offense, *i.e.* that the adulterant was intended to defeat a drug test.

■ "[T]he First Amendment does not protect commercial speech about unlawful activities." *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 497 n. 7, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) (*citing Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973)). Adulterating a urine sample to defeat a drug or alcohol test is an illegal activity under subsection (3) of § 16–13–470(A). Commercial speech promoting this illegal activity is therefore not protected. Evidence of such speech may be used to prove intent under § 16–13–470(A)(4) without violating the First Amendment.

*Mens rea element*

■ Appellant contends § 16–3–470(A)(4) is impermissibly vague because it contains no mens rea element.[4] We construe § 16–13–470(A)(4) to require that the person possess-

---

**3.** Appellant complains that Zydot is simply a "sophisticated Gatorade" and drinking large amounts of water could also defeat a urine drug test.

**4.** *But see State v. Ferguson, infra* (stating that the legislature, if it so chooses, may make an act or omission a crime regardless of fault).

ing the product intended it be used as an adulterant. The statute thus contains a mens rea element. *See State v. Ferguson,* 302 S.C. 269, 395 S.E.2d 182 (1990) (knowledge and intent as examples of mental state). Appellant's complaint is without merit.

## *Irrelevant evidence*

Appellant contends the trial judge erroneously allowed evidence of the ad, the search warrant, and the other adulterants seized from his store. He claims this evidence is irrelevant because it goes to show mental culpability which is not an element of § 16–13–470(A)(4). Under our reading of the statute, the evidence evincing appellant's mental culpability is relevant and was properly admitted.

## *Directed verdict*

Appellant contends the trial judge should have granted his motion for directed verdict. We disagree.

A defendant is entitled to a directed verdict when the State fails to produce any direct or substantial circumstantial evidence of the offense charged. *State v. Buckmon,* 347 S.C. 316, 555 S.E.2d 402 (2001). Here, there was evidence appellant owned the store where the adulterants were for sale and there were invoices indicating he had paid for them. Further, it can be inferred from the ad advertising the adulterants for sale at appellant's store that he possessed them with the intent they be used to defeat drug or alcohol tests. Accordingly, the motion for directed verdict was properly denied.

**AFFIRMED.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.