*606 S.E.2d 475*

**The STATE, Respondent,**

**v.**

**Yukoto Eugene CHERRY, Petitioner.**

**No. 25902.**

Supreme Court of South Carolina.

Heard Dec. 2, 2003.

Decided Nov. 29, 2004.

Rehearing Denied Jan. 6, 2005.

Chief Attorney Daniel T. Stacey, of S.C. Office of Appellate Defense, of Columbia; and Jeanne Allison Pearson, of Kennedy Covington Lobdell & Hickman, LLP, and Thomas F. McDow, both of Rock Hill, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Assistant Attorney General Deborah R.J. Shupe, all of Columbia, and Solicitor Thomas E. Pope, of York, for Respondent.

Justice WALLER:

We granted a writ of certiorari to review the Court of Appeals' opinion in *State v. Cherry*, 348 S.C. 281, 559 S.E.2d 297 (Ct.App.2001). We affirm in result.

## FACTS

Cherry was convicted of possession of crack cocaine with intent to distribute (PWID crack) and sentenced to five years and a twenty-five thousand dollar fine.[1] The state's evidence

---

1. He was also indicted for possession of crack within proximity of a park. The trial judge directed a verdict for Cherry on this count.

at trial showed that Cherry was a passenger in the back seat of a vehicle which was stopped for going straight from a left turn lane and for failing to use a signal. Officer Parker, who stopped the car, testified that while he was writing out a citation, his backup, Officer Lubben, observed the driver of the vehicle place a pistol in a diaper bag; the driver was arrested. Officer Parker then asked the passengers to exit the vehicle. A pat-down search of Cherry revealed 8 rocks of crack cocaine in the watch pocket of his jeans.[2] The officer testified that he found $322.00, mostly in twenty-dollar bills, in Cherry's left front pocket, and that crack cocaine is usually sold in twenty dollar rocks. Officer Parker also testified he did not find any drug paraphernalia or crack pipes in the car which would typically be associated with smoking rock cocaine. Lastly, Officer Parker testified that the stop was made in a high crime area known for drugs.

At the close of the state's evidence, Cherry's motion for a directed verdict on PWID crack was denied. Thereafter, the court instructed the jury on "circumstantial evidence," essentially giving the charge recommended by this Court in *State v. Grippon*, 327 S.C. 79, 83–84, 489 S.E.2d 462, 464 (1997) to wit:

There are two types of evidence which are generally presented during a trial—direct evidence and circumstantial evidence. Direct evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact. The law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all the evidence in the case. After weighing all the

---

2. The total weight of the crack was .9 grams, one-tenth gram short of the amount required to give rise to a permissive inference of distribution. S.C.Code Ann. § 44–53–375(B) (Supp.2002)(possession of one or more grams of crack cocaine is prima facie evidence of a violation of the PWID statute). However, a conviction of PWID does not hinge upon the amount involved. *State v. Adams*, 291 S.C. 132, 352 S.E.2d 483 (1987); *State v. Simpson*, 275 S.C. 426, 272 S.E.2d 431 (1980), *cert. denied* 451 U.S. 911, 101 S.Ct. 1982, 68 L.Ed.2d 300 (1981).

evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find [the defendant] not guilty.[3]

After the judge finished instructing the jury, Cherry requested an instruction on the difference between direct and circumstantial evidence, essentially to the effect that in considering circumstantial evidence, all of the circumstances proven must be consistent with each other and taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis.[4] The court declined the charge; the jury convicted Cherry of PWID crack.

On appeal, Cherry contended he was entitled to a directed verdict on the charge of PWID crack, and that the trial judge erred in refusing to give a traditional circumstantial evidence charge, pursuant to *State v. Edwards supra.* The case was initially decided by a three-judge panel of the Court of Appeals, which affirmed Cherry's conviction.[5] An *en banc* rehearing yielded six separate opinions. Three judges (Stilwell, Huff and Goolsby) voted to affirm, believing that the PWID charge was properly submitted to the jury and that the circumstantial evidence charge was proper under *Grippon.* Four judges (Howard, Hearn, Cureton and Connor)[6] believed Cherry was entitled to a directed verdict on the PWID crack charge, and three (Anderson, Shuler, and Connor[7]) believed Cherry should have been given a fuller circumstantial evidence charge. Cherry's conviction was affirmed. *State v. Cherry,* 348 S.C. 281, 559 S.E.2d 297 (Ct.App.2001).

3. The trial court also gave a very thorough "reasonable doubt" charge.

4. *See State v. Edwards,* 298 S.C. 272, 379 S.E.2d 888, *cert. denied,* 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed.2d 196 (1989); *State v. Littlejohn,* 228 S.C. 324, 89 S.E.2d 924, 926 (1955); Tom J. Ervin, *Ervin's South Carolina Requests to Charge–Criminal* § 3–4 (1994).

5. *State v. Cherry,* 353 S.C. 263, 577 S.E.2d 719 (2001).

6. Judges Hearn and Cureton concurred in Judge Howard's opinion; Judge Connor wrote separately and concurred in part with Judge Howard's opinion, and concurred in part with Judge Shuler's opinion.

7. Judge Connor was the only member of the panel who would have reversed on both issues.

## ISSUES

1. Was Cherry entitled to a directed verdict on the PWID crack charge?

2. Should the trial court have given a fuller circumstantial evidence charge pursuant to *State v. Edwards* ?

## 1. DIRECTED VERDICT

██ Cherry contends there was insufficient evidence of his intent to distribute crack cocaine, such that he was entitled to a directed verdict on the PWID crack charge. We disagree.

In his majority opinion, Judge Stilwell cited the following evidence warranting submission of the case to the jury: the arrest occurred in a high crime area known for violence and drug activity; Cherry had a small bag containing **eight rocks of crack cocaine** on his person; he had no crack pipe or other drug paraphernalia indicating the crack cocaine was for his personal consumption; he had **$322.00 cash** on his person, **mostly in twenty dollar bills;** and Officer Parker testified a **single rock of crack cocaine is typically sold for twenty dollars.** Viewing this evidence in the light most favorable to the state, the Court of Appeals majority found the combination of these factors constitute evidence which would reasonably tend to prove Cherry intended to distribute crack such that the matter was properly submitted to the jury. We agree.

██ When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Gaster,* 349 S.C. 545, 555, 564 S.E.2d 87, 92 (2002). A defendant is entitled to a directed verdict when the state fails to produce evidence of the offense charged. *State v. McKnight,* 352 S.C. 635, 642, 576 S.E.2d 168, 171, *cert. denied,* 540 U.S. 819, 124 S.Ct. 101, 157 L.Ed.2d 36 (2003); *State v. Rothschild,* 351 S.C. 238, 243, 569 S.E.2d 346, 348 (2002). When reviewing a denial of a directed verdict, this Court must view the evidence and all reasonable inferences in the light most favorable to the state. *State v. Burdette,* 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999). If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an

appellate court must find the case was properly submitted to the jury. *State v. Harris*, 351 S.C. 643, 653, 572 S.E.2d 267, 273 (2002); *State v. Venters*, 300 S.C. 260, 264, 387 S.E.2d 270, 272–73 (1990). *See also State v. Gaster, supra* (on an appeal from trial court's denial of a motion for a directed verdict, appellate court may only reverse the trial court if there is no evidence to support the trial court's ruling).

When the state relies exclusively on circumstantial evidence and a motion for directed verdict is made, the circuit court is concerned with the existence or nonexistence of evidence, not with its weight. *State v. Mitchell*, 341 S.C. 406, 409, 535 S.E.2d 126, 127 (2000). The circuit court should not refuse to grant the directed verdict motion when the evidence merely raises a suspicion that the accused is guilty. *Id.* at 409, 535 S.E.2d at 127. "Suspicion" implies a belief or opinion as to guilt based upon facts or circumstances which do not amount to proof. *State v. Lollis*, 343 S.C. 580, 541 S.E.2d 254 (2001). However, **a trial judge is not required to find that the evidence infers guilt to the exclusion of any other reasonable hypothesis.** *State v. Ballenger*, 322 S.C. 196, 470 S.E.2d 851 (1996); *State v. Edwards, supra.*

In *Edwards, supra,* we rejected the contention that in ruling on a directed verdict motion, the trial judge must grant a directed verdict unless the circumstantial evidence pointed conclusively to the defendant's guilt, to the exclusion of every other reasonable hypothesis. Instead, we held it is the trial judge's "duty to submit the case to the jury if there be any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly and logically deduced." 298 S.C. at 275, 379 S.E.2d at 889, *citing State v. Littlejohn*, 228 S.C. 324, 89 S.E.2d 924 (1955) (emphasis in original).

Here, there was evidence at trial which reasonably tended to prove Cherry's guilt of PWID, and from which a jury could fairly and logically deduce his guilt of that offense. As noted previously, the evidence relied upon to prove PWID crack was as follows: the arrest occurred in a high crime area known for violence and drug activity; Cherry had a small bag containing eight rocks of crack cocaine on his person; he had no crack pipe or other drug paraphernalia indicating the crack cocaine

was for his personal consumption; he had $322.00 cash on his person, mostly in twenty dollar bills; and Officer Parker testified a single rock of crack cocaine is typically sold for twenty dollars.[8] We find this combination of factors is sufficient for the jury to infer an intent to distribute. Accordingly, the Court of Appeals' opinion is affirmed on this issue.

## 2. CIRCUMSTANTIAL EVIDENCE CHARGE

■ Cherry asserts the trial court erred in refusing to instruct the jury the law of circumstantial evidence, as set forth by this Court in *State v. Littlejohn, supra,* and *State v. Edwards, supra.* We disagree.

Traditionally, when charging the jury in a circumstantial evidence case, the following was the recommended instruction:

every circumstance relied upon by the State [must] be proven beyond a reasonable doubt; and ... all of the circumstances so proven be consistent with each other and taken together, **point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis.** It is not sufficient that they create a probability, though a strong one and if, assuming them to be true they may be accounted for upon any reasonable hypothesis which does not include the guilt of the accused, the proof has failed.

*State v. Edwards,* 298 S.C. at 275, 379 S.E.2d at 889, *citing State v. Littlejohn,* 228 S.C. 324, 89 S.E.2d 924, 926 (1955) (emphasis supplied).

However, in 1997, in light of the United States Supreme Court's opinion in *Holland v. United States,* 348 U.S. 121, 75

---

8. In *State v. Robinson,* 344 S.C. 220, 543 S.E.2d 249 (2001), the Court of Appeals affirmed the denial of the defendant's motion for a directed verdict on the offense of PWID crack where the evidence at trial revealed police observed the defendant throw a plastic bag up in the air, which contained seven rocks of crack cocaine, having a total weight of .9 grams. There was no evidence the defendant had an excess amount of cash, or twenty dollar bills on his person, no evidence of any other drug paraphernalia, and no testimony as to the amount each rock of crack would sell for. The sole testimony relied upon by the Court of Appeals panel in that case was testimony of police officers that it is not typical for a simple user of crack cocaine to possess seven rocks of crack at one time, and that they typically possess only one or two rocks. 344 S.C. at 223, 543 S.E.2d at 250.

S.Ct. 127, 99 L.Ed. 150 (1954), a majority of this Court held in *State v. Grippon*, 327 S.C. 79, 489 S.E.2d 462 (1997), that so long as the jury is properly instructed on reasonable doubt, it is unnecessary for the trial court to instruct the jury that "circumstantial evidence must be so strong as to exclude every reasonable hypothesis other than guilt." *Id.* at 83, 489 S.E.2d at 464.

In *Grippon*, the defendant was indicted for murder, but convicted of voluntary manslaughter. Grippon asserted he had stabbed the victim after the victim attempted to rape him. The trial judge charged the jury the law of circumstantial evidence, but omitted the phrase "to the exclusion of every other reasonable hypothesis," believing the phrase shifted the burden of proof from the state to the defendant.[9] Although this Court held that the "reasonable hypothesis" language did not shift the burden of proof, we held the instruction actually given by the trial court, adequately conveyed the level of proof required to find Grippon guilty. *Id.* The *Grippon* majority went on to recommend the following charge in cases relying on circumstantial evidence:

> There are two types of evidence which are generally presented during a trial—direct evidence and circumstantial evidence. Direct evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact. The law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all the evidence in the case. After weighing all the evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find [the defendant] not guilty.

9. In *State v. Manning*, 305 S.C. 413, 417, 409 S.E.2d 372, 374 (1991), we held that a circumstantial evidence charge which requires the jury to seek some reasonable explanation other than the defendant's guilt "turns the State's burden of proof on its head by requiring the jury to find a 'reasonable explanation' of the evidence inconsistent with appellant's guilt before it can find him not guilty."

327 S.C. at 83–84, 489 S.E.2d at 464.[10]

Since *Grippon* was decided, several opinions of this Court have appeared to retain the traditional *Edwards* circumstantial evidence charge as an alternative to the charge recommended in *Grippon. See State v. Graddick,* 345 S.C. 383, 548 S.E.2d 210 (2001) (upholding charge which was a hybrid of the traditional charge and that recommended by *Grippon*); *State v. Needs,* 333 S.C. 134, 156, 508 S.E.2d 857, 868, n. 13 (1998) (noting there are two appropriate ways to charge circumstantial evidence). *See also Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 338, 534 S.E.2d 672, 681, n. 6 (2000) (noting that the traditional circumstantial evidence charge requires greater scrutiny than direct evidence in a criminal proceeding).

It is patent from our decision in *Grippon* that the *Edwards* charge is no longer a **required** instruction. However, we must decide whether the *Edwards* charge **may** be given as an alternative to a *Grippon* charge, or whether the language recommended in *Grippon* is the sole remaining instruction in a circumstantial evidence case. We hold that *Grippon* is the sole remaining charge to be utilized by the courts of this state in instructing juries in cases relying, in whole or in part, on circumstantial evidence.

The first American case adopting the "to the exclusion of every reasonable hypothesis" standard was *Commonwealth v. Webster,* 59 Mass. (5 Cush.) 295 (1850). However, from its outset, critics challenged the "reasonable hypothesis" circumstantial evidence charge on the ground that circumstantial evidence should be treated no differently than direct evidence. *See* Irene Rosenberg and Yale Rosenberg, *"Perhaps What Ye Say Is Based Only on Conjecture"—Circumstantial Evidence Then and Now,* 31 Hous. L.Rev. 1371, 1392, nn. 79–80 (1995) (hereinafter Rosenberg article) at p. 1392, nn. 79–80.

Ultimately, the United States Supreme Court, in *Holland v. United States, supra,* held there was no difference between direct and circumstantial evidence, and that consequently in

---

**10.** Justice Toal, joined by Justice Finney, concurred in result only. Although they agreed that Grippon's conviction should be affirmed, they saw no need to discontinue use of the standard *Edwards* circumstantial evidence charge.

federal court there was no requirement the trial judge charge the jury that the evidence must be such as to exclude every reasonable hypothesis but that of guilt. Justice Clark reasoned that if the jury was properly instructed on the standards for reasonable doubt, a circumstantial evidence instruction was "confusing and incorrect." 348 U.S. at 139–140, 75 S.Ct. 127.

All of the federal courts, and the vast majority of state courts have adopted the United States Supreme Court's approach in *Holland. See* Rosenberg at nn. 121–122.[11] A number of the state court decisions offer persuasive reasoning for abandoning the "reasonable hypothesis" circumstantial evidence charge.

In *State v. Adcock,* 310 N.C. 1, 310 S.E.2d 587, 602–608 (1983), the defendant objected to the trial court's failure to instruct the jury that in order to justify a verdict of guilty, the circumstantial evidence must "exclude every reasonable hypothesis of innocence." The North Carolina Supreme Court agreed that the evidence must indeed exclude every reasonable hypothesis of innocence but held that:

after all, the convincing effect of circumstantial evidence on the mind of the jury is measured by the same standard of intensity required of any other evidence—the jury must be convinced beyond a reasonable doubt as to every element of the crime before they find the defendant guilty of it, whether the evidence is wholly circumstantial, only partly so, or entirely what we sometimes refer to as direct. No set formula is required to convey to the jury this fixed principle relating to the degree of proof required for conviction. The instruction adopts the formula most often used and to which we sooner or later all refer—proof beyond a reasonable doubt.

Citing Judge Learned Hand, the *Adcock* Court went on:

The judge failed to charge the jury as to circumstantial evidence, contenting himself with an entirely neutral state-

---

**11.** For a list of states adopting the *Holland* approach, see *Hankins v. State,* 646 S.W.2d 191, 197–198 (Tex.Crim.App.1981)(op. on reh'g). *See also* Carroll J. Miller, *Modern Status of Rule Regarding Necessity of Instruction on Circumstantial Evidence in Criminal Trial–State Cases,* 36 A.L.R.4th 1046, § 5(1985).

ment of the opposed contentions of the parties, though he had been asked to say that such evidence was enough only when it foreclosed the hypothesis of innocence. He had with ample elaboration told them that they must be satisfied beyond fair doubt of the defendant's guilt, and that in our judgment was enough, though some courts have held otherwise. **The requirement seems to us a refinement which only serves to confuse laymen into supposing that they should use circumstantial evidence otherwise than testimonial.** All conclusions have implicit major premises drawn from common knowledge; the truth of testimony depends as much upon these as do inferences from events. A jury tests a witness's credibility by using their experience in the past as to similar utterances of persons in a like position. That is precisely the same mental process as when they infer from an object what has been its past history, or from an event what must have preceded it. **All that can be asked is that the importance of the result to the accused shall demand a corresponding certainty of his guilt; and this is commonly and adequately covered by telling them that the conclusion shall be free from fair doubt. To elaborate this into an inexorable ritual, or to articulate it for different situations, is more likely to impede, than to promote, their inquiry.**
310 N.C at 34–35, 310 S.E.2d at 606–607, *citing United States v. Becker,* 62 F.2d 1007, 1010 (2nd Cir.1933) (emphasis supplied).

The Vermont Supreme Court has also noted that the "exclusion of every reasonable hypothesis of innocence" standard is simply a method for evaluating whether the reasonable doubt standard has been met. *State v. Derouchie,* 140 Vt. 437, 440 A.2d 146, 149 (1981).[12] *Derouchie* noted other criticisms of the "reasonable hypothesis" standard: "first, as a device for judicial evaluation of the sufficiency of the evidence, the 'exclusion of every reasonable hypothesis of innocence' test is premised upon a now suspect distrust of circumstantial evidence.... Second, ... [r]ather than assisting jurors in applying the reasonable doubt standard, the traditional circumstantial evi-

---

12. *See also United States v. Richardson,* 562 F.2d 476 (7th Cir.1977), *cert denied,* 434 U.S. 1021, 98 S.Ct. 746, 54 L.Ed.2d 768 (1978); *Nichols v. State,* 591 N.E.2d 134 (Ind.1992).

dence charge has been condemned for having the opposite effect. **By directing juror's attention to an additional, yet unnecessary, level of analysis, the circumstantial evidence charge serves only to confuse the real issue."** *Id.* (emphasis supplied).

The Ohio Supreme Court has also addressed the continued validity of the charge, stating "[t]he underlying rationale for the requirement that a circumstantial-evidence instruction should be given is predicated upon the assumption that circumstantial evidence is inherently suspicious and less trustworthy than is direct evidence. It is assumed that the multiple-hypothesis instruction is desirable in order to guard against an improper reliance and use by the jury of tenuous circumstantial evidence." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), *superseded by state constitutional amendment on other grounds, State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), *cert denied,* 523 U.S. 1125, 118 S.Ct. 1811, 140 L.Ed.2d 949 (1998). *Jenks* went on to hold:

It is simply untenable to assume that circumstantial evidence is less reliable than is direct evidence. In short, whether direct evidence or circumstantial evidence is more trustworthy and probative depends upon the particular facts of the case and no generalizations realistically can be made that one class of evidence is per se more reliable than is the other class of evidence. Obviously, since circumstantial evidence is not per se less reliable than is direct evidence, there is no need to give the multiple-hypothesis instruction when circumstantial evidence is involved. In addition, **we think the instruction is essentially a convoluted one, the main effect of which is to confuse the jury, possibly implying that a higher standard than reasonable doubt is necessary to render a verdict of guilty when circumstantial evidence is employed.**

574 N.E.2d at 501, *citing State v. Gosby,* 85 Wash.2d 758, 539 P.2d 680 (1975) (emphasis supplied). The West Virginia Supreme Court has similarly stated:

Circumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence. Hence, we can discern no reason to continue the requirement that circumstantial evidence must be irreconcilable

with any reasonable theory of an accused's innocence in order to support a finding of guilt. We agree with those courts that have held that an additional instruction on the sufficiency of circumstantial evidence invites confusion and is unwarranted. Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. Nothing more should be required of a factfinder.

*State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163, 175 (1995). *See also State v. Humpherys*, 134 Idaho 657, 8 P.3d 652 (2000)(holding that in all criminal cases there should be only one standard of proof, which is beyond a reasonable doubt. Therefore, once the jury has been properly instructed on the reasonable doubt standard of proof, the defendant is not entitled to an additional instruction on circumstantial evidence even when all the evidence is circumstantial); *State v. Ferm*, 94 Hawai'i 17, 7 P.3d 193 (2000).

We are persuaded by the authorities highlighted above that the reasonable hypothesis charge merely serves to confuse juries by leading them to believe that the standard for measuring circumstantial evidence is different than that for measuring direct evidence when, in fact, it is not.[13] The standard remains whether the evidence reflects proof of the defendant's guilt beyond a reasonable doubt. Accordingly, we hold that the recommended language in *Grippon* is the sole and exclusive charge to be given in circumstantial evidence cases in this state,[14] along with a proper reasonable doubt instruction. The

---

**13.** We are not unmindful that there are arguments, as pointed out by Chief Justice Toal's dissent, which may be advanced in favor of retention of the traditional *Edwards* circumstantial evidence charge, and some jurisdictions have chosen to adhere to the "exclusion of any reasonably hypothesis" instruction. However, these same arguments were advanced by the concurrence in *State v. Grippon, supra*, and the majority of this Court declined, at that time, to join the concurrence. *See Grippon, supra*, 327 S.C. at 84–89, 489 S.E.2d at 464–467 (Justice Toal, concurring in result only).

**14.** To the extent our opinions in *Grippon, supra; State v. Graddick, supra; State v. Needs, supra* and *Moriarty v. Garden Sanctuary Church of God, supra*, are inconsistent with this holding, they are modified.

opinion of the Court of Appeals is affirmed in result only.[15]

**AFFIRMED IN RESULT ONLY.**

MOORE and BURNETT, JJ., concur. TOAL, C.J., dissenting in a separate opinion in which Acting Justice REGINALD I. LLOYD concurs.

Chief Justice TOAL:

The majority holds that the jury charge recommended in *State v. Grippon* is the sole and exclusive charge to be given in cases relying, in whole or in part, on circumstantial evidence. Because I believe that South Carolina courts should not abandon the traditional circumstantial evidence charge described in *State v. Edwards,* I dissent.

The traditional circumstantial evidence charge provides that when the State relies on circumstantial evidence to prove its case, a jury may not convict the defendant unless "every circumstance relied upon by the State [has been] proven beyond a reasonable doubt," and "all of the circumstances so proven [are] consistent with each other and, taken together, point conclusively to the guilt of the accused *to the exclusion of every other reasonable hypothesis." State v. Edwards,* 298 S.C. 272, 275, 379 S.E.2d 888, 889, *cert. denied,* 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed.2d 196 (1989) (citing *State v. Littlejohn,* 228 S.C. 324, 89 S.E.2d 924 (1955)) (emphasis added). This charge is well established in South Carolina. *E.g., Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 338 n. 6, 534 S.E.2d 672, 681 n. 6 (2000); *State v. Owens,* 291 S.C. 116, 352 S.E.2d 474 (1987); *State v. McIver,* 238 S.C. 401, 120 S.E.2d 393 (1961); *State v. Dornberg,* 192 S.C. 513, 7 S.E.2d 467 (1940).

Recently, in *State v. Grippon,* this Court approved another charge that may be given instead of the traditional circumstantial evidence charge.[16] 327 S.C. 79, 83–84, 489 S.E.2d 462,

---

**15.** In light of our holding, we need not address Cherry's remaining argument concerning the effect of the Court of Appeals' divided opinions.

**16.** Although a new charge was recommended, the Court did not overrule the traditional circumstantial evidence charge. *State v. Graddick,* 345 S.C. 383, 388, 548 S.E.2d 210, 212 (2001).

464 (1997). The charge recommended in *Grippon* emphasizes that direct and circumstantial evidence are to be given the same weight. More importantly, the charge does not require, as does the traditional charge, that the circumstances "point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis." Consequently, the *Grippon* charge leads jurors to believe, in my view, that direct and circumstantial evidence are to be evaluated in the very same manner. Because I disapproved of the new charge, I wrote a separate, concurring opinion. *Id.* at 84, 489 S.E.2d at 464.

Today, the Court holds that once a proper reasonable doubt instruction has been given, the charge recommended in *Grippon* is the sole remaining charge to be given in circumstantial evidence cases. In support of its holding, the majority finds that the traditional circumstantial evidence charge confuses jurors "by leading them to believe that the standard for measuring circumstantial evidence is different than that for measuring direct evidence." Because I continue to disapprove of the *Grippon* charge, I write separately once again, this time in dissent.

It is clear that circumstantial and direct evidence may be "equally valid and convincing" in a criminal case. *Moriarty,* 341 S.C. at 338 n. 6, 534 S.E.2d at 681 n. 6. But unlike direct evidence, circumstantial evidence establishes *collateral facts* from which the main facts may be *inferred.* *State v. Salisbury,* 343 S.C. 520, 525 n. 1, 541 S.E.2d 247, 249 n. 1 (2001) (citations omitted). The evaluation of circumstantial evidence, therefore, requires jurors to connect collateral facts in order to reach a conclusion—a process not required when evaluating direct evidence.

The traditional circumstantial evidence charge does not, in my view, create confusion or change the standard for measuring circumstantial evidence. Instead, the charge clarifies the jury's responsibility to evaluate circumstantial evidence carefully and gives jurors more detailed information about the relation of circumstantial evidence to the determination of guilt. Moreover, the standard for evaluating evidence remains unchanged: every circumstance must be proven beyond a reasonable doubt. Therefore, in my view, the *Edwards* charge should be retained.

The *Grippon* charge, on the other hand, does nothing to alert the jury to this separate and distinct analytical framework. This lack of instruction may have unintended, dangerous consequences. Juries may make logical leaps when putting evidence together, and in doing so, may reach illogical conclusions based on emotion or intuition instead of a rational, deliberative process.

In the present case, the State relied on the following evidence to prove, beyond a reasonable doubt, that Cherry was guilty of PWID: Cherry was a passenger in a car that was in a high crime area "known for drugs"; Cherry was carrying eight rocks of crack cocaine and $322.00, most of which was in twenty-dollar bills; and no drug paraphernalia were found in the car. Because the evidence of "intent to distribute" was purely circumstantial, Cherry requested that the trial judge charge the jury with the traditional circumstantial evidence charge.

Although it is inferable that Cherry intended to distribute crack cocaine, it is equally as inferable, in my view, he did not. Possessing drugs in a high crime area "known for drugs" does not automatically make one a drug dealer. It is also reasonable that $322 in cash would be comprised of mostly twenty-dollar bills. Moreover, it is reasonable to conclude that because Cherry did not have the requisite amount of crack cocaine on him to give rise to a permissive inference of distribution, he did not intend to distribute crack cocaine. Finally, that there were no drug paraphernalia in the car may or may not establish that Cherry was carrying the crack for his personal use.

In sum, there is no direct evidence that Cherry intended to distribute crack cocaine. Therefore, even if each circumstance were proven beyond a reasonable doubt, jurors must still ask themselves, under the *Edwards* charge, whether there is any other reasonable conclusion other than guilt. Without this instruction, the jury does not know that this critical step in the reasoning process exists. In fact, the jury is without an analytical framework in which to evaluate the evidence. That the circumstances could lead a juror to make reasonable inferences either way highlights the importance of retaining the *Edwards* charge.

I recognize, as I did in my *Grippon* concurrence, that a majority of states have abandoned the circumstantial evidence charge in favor of an approach that does not differentiate between direct and circumstantial evidence and simply provides that a defendant's guilt must be proven beyond a reasonable doubt. *See* Irene Merker Rosenberg & Yale L. Rosenberg, *"Perhaps What Ye Say Is Based Only on Conjecture"—Circumstantial Evidence Then and Now,* 31 Hous. L.Rev. 1371, 1400 (1995) (describing the abandonment of the circumstantial evidence charge as a "bandwagon effect" in response to the United States Supreme Court's decision in *Holland v. United States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), rather than a reasoned rejection of the longstanding charge). But several states have continued to require the special charge when the State's case is based wholly or substantially on circumstantial evidence.[17]  *E.g., Stubbs v. State,* 265 Ga. 883, 463 S.E.2d 686 (1995); *Nichols v. State,* 591 N.E.2d 134 (Ind.1992); *People v. Ford,* 66 N.Y.2d 428, 497 N.Y.S.2d 637, 488 N.E.2d 458 (1985); *People v. Towler,* 31 Cal.3d 105, 181 Cal.Rptr. 391, 641 P.2d 1253 (1982). Further, some states have advanced cogent reasons for retaining the charge. *See, e.g., Ford,* 497 N.Y.S.2d 637, 488 N.E.2d at 465 (retaining the charge because it emphasizes the need for careful reasoning and "forecloses [the] danger . . . that the trier of facts may leap logical gaps in the proof offered and draw unwarranted conclusion based on probabilities of low degree"); *State v. Nelson,* 112 Idaho 245, 731 P.2d 788 (1986), *aff'd,* 114 Idaho 292, 756 P.2d 409 (1988) (rejecting the argument that the "reasonable hypothesis" language confused jurors and concluding that the language gave "sharpened clarity" to the meaning of reasonable doubt).

In my view, the charge advanced today as the sole and exclusive charge to be given in circumstantial evidence cases does nothing to direct the jury's deliberative process. By omitting the "reasonable hypothesis" language, this Court leaves open the possibility that even when a reasonable

---

17. For a complete list of states requiring the charge in cases where the evidence is wholly or substantially circumstantial, see Caroll J. Miller, *Modern Status of Rule Regarding Necessity of Instruction on Circumstantial Evidence in Criminal Trial—State Cases,* 36 A.L.R.4th 1046, § 3 (2004).

theory exists supporting a defendant's innocence, a (possibly erroneous) conviction will stand.

Therefore, in my view, the trial judge erred in not granting Cherry's request that the jury be given the *Edwards* charge.

Acting Justice REGINALD I. LLOYD, concurs.