759 S.E.2d 759

**The STATE, Respondent,**

**v.**

**Clarence Williams JENKINS, Appellant.**

Appellate Case No. 2012-211588.

No. 5232.

Court of Appeals of South Carolina.

Heard May 6, 2014.

Decided May 21, 2014.

Withdrawn, Substituted and Refiled July 9, 2014.

Rehearing Denied July 9, 2014.

Appellate Defender Susan Barber Hackett, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General Melody Jane Brown, all of Columbia; and William Walter Wilkins, III, of Greenville, for Respondent.

GEATHERS, J.

Appellant Clarence Williams Jenkins seeks review of his convictions for kidnapping and murder. Appellant argues the trial court's refusal to provide the jury with the circumstantial evidence instruction set forth in *State v. Edwards*[1] violated his right to require the prosecution to prove his guilt beyond a reasonable doubt. Appellant also challenges the trial court's failure to strike the testimony of the State's fingerprint ex-

---

1. 298 S.C. 272, 274–76, 379 S.E.2d 888, 889 (1989), *abrogated by State v. Cherry*, 361 S.C. 588, 595–606, 606 S.E.2d 475, 478–82 (2004).

pert, or, in the alternative, to grant a mistrial, arguing the prosecution withheld evidence material to the testimony in question. We affirm.

## FACTS/PROCEDURAL HISTORY

On the morning of April 7, 2008, Sue Bostic discovered a garbage bag with unknown contents sitting on her front porch and a threatening note under the windshield wiper of her automobile.[2] Bostic contacted the Greenville City Police Department, and Officer Scott Odom responded to the call. Officer Amber Allen also arrived at the scene and spoke with Bostic while Officer Odom took the garbage bag to the back of his vehicle to inspect the bag's contents. Officer Odom discovered a severed human foot and hand and several severed toes. Officer Michael Petersen, who was employed with the forensic division of the Greenville County Department of Public Safety, then arrived to assist in processing the crime scene and collecting the evidence. Officers Allen and Petersen were informed that a similar note and garbage bag containing severed body parts had been left at the residence of Judon Burnside. They later proceeded to this residence to collect the evidence.

Officer Petersen took the garbage bags and their contents to the morgue and rolled fingerprint impressions from the severed hands. Captain Jackie Kellet, of the forensic division of the Greenville County Department of Public Safety, examined the fingerprints processed by Officer Petersen and matched them to fingerprints on file for Mekole Harris (Victim).

On April 10, 2008, police arrested Appellant and his wife, Carmen Jenkins (Wife), for the murder of Victim. On November 18, 2008, the Greenville County Grand Jury indicted Appellant for murder. In December of 2008, the State filed a Notice of Intent to Seek the Death Penalty against Appellant and Wife. In September of 2009, Wife advised investigators of the location of Victim's remains in exchange for the State's

---

2. The facts of this case are horrific; however, it is necessary to discuss them to give context to Appellant's arguments regarding circumstantial evidence and to explain the relevance of Appellant's arguments regarding the fingerprint identification of the victim.

withdrawal of its Notice of Intent to Seek the Death Penalty against Wife.

On March 9, 2011, Wife entered into a plea agreement with the State, requiring her truthful testimony in Appellant's trial in exchange for the State's subsequent request for a reduction in Wife's sentence. On September 13, 2011, the Grand Jury indicted Appellant for the kidnapping of Victim. On March 27, 2012, Wife pled guilty to the murder of Victim and was sentenced to fifty years of imprisonment. On this same day, the State withdrew its Notice of Intent to Seek the Death Penalty against Appellant.

Appellant's trial took place on April 9 through 13, 2012. Captain Kellet, who had matched the fingerprints from the severed hands to Victim's fingerprints, was qualified as an expert in fingerprint analysis, and she explained the process she went through in identifying Victim's fingerprints. The first step was entering the unknown fingerprints into the Automated Fingerprint Identification System (AFIS), a computerized database maintained by the South Carolina Law Enforcement Division (SLED). She explained that AFIS sends back a list of potential matches, and in this case "we ask for the top 25 people." Here, Victim's "State ID number"[3] was the first number on the list of potential matches. Captain Kellet then pulled a fingerprint card for Victim from agency records and visually compared, point by point, Victim's prints to the unknown prints. Once she determined the known and unknown fingerprints matched, she felt no need to examine any other fingerprints from the AFIS list of potential matches.

The State also presented the testimony of Wife, who testified about Appellant's alleged plan to intimidate a former housemate, Grace Davis, into returning to their home and continuing to live with them. According to Wife, during the time Davis lived with Appellant and Wife, Davis developed an intimate relationship with both of them. Eventually, the Department of Social Services removed Davis's children from the home and notified her that she could not regain custody of her children as long as she was living with Appellant and Wife. Therefore, Davis left the home. A few days later, Appellant

---

3. The State ID number "is assigned to you by SLED if you've ever been fingerprinted."

told Wife that Davis "needed to come back to [their] relationship because she was a partner in [their] relationship" and "she knew too much about the organization that he was in." Appellant also told Wife "the organization would kill all of [them] if she didn't come back." Wife testified that she had never heard about this organization until that day.

Appellant began executing his plan to intimidate Davis by mailing threatening letters to her and to members of her family. Next, on the evening of Friday, April 4, 2008, Appellant brought home Victim, a prostitute, and handcuffed her to a bed. Appellant told Victim that he and Wife were police officers and that Victim was "under arrest for prostitution and possession of crack." Appellant also told Victim that the only way she would get out of those "charges" was for her to help Appellant and Wife with a "case." The "case" Appellant referenced was his plan to intimidate Davis into returning to their home.

After Victim agreed to cooperate, Appellant removed the handcuffs. Appellant wrote out a script for Victim to read over the telephone to members of Davis's family. Appellant then handcuffed Victim again and gave the script to her to memorize. Sometime around midnight, Appellant, Wife, and Victim went to a pay telephone at a nearby gasoline station, and Appellant dialed the telephone numbers for Davis's mother, Judon Burnside, and Davis's aunt, Sue Bostic. During each telephone call, Victim recited the material from the script written by Appellant. Appellant and Wife then took Victim back to their home, and Appellant handcuffed Victim to a chair for the remainder of the day on Saturday.

On Saturday night, Appellant crushed up "some Tylenol PM and some other sleeping medicine," mixed it into some ice cream, and gave it to Victim. However, Victim only ate a small amount of the ice cream. On the next day, Sunday, April 6, 2008, Appellant ordered Wife to kill Victim, who was still handcuffed to the chair. Wife attempted to strangle Victim with a cable cord, but as Victim struggled against Wife, Wife lost control of the cord. Appellant then tied the cord to the back of the chair, placed a plastic bag over Victim's head, and suffocated her.

Appellant and Wife took Victim's body to the bathroom and placed her body in the shower. Later that day, Appellant dismembered Victim's body, forcing Wife to participate, and placed the dismembered hands and feet in the couple's freezer. Appellant and Wife disposed of Victim's body near a golf course on Paris Mountain and returned to their residence, where Appellant placed the dismembered parts into two separate garbage bags.

After midnight, Appellant and Wife went to Bostic's apartment. Appellant "dropped [Wife] off right at the entrance of the apartments...." Wife took one of the garbage bags and threw it onto Bostic's front porch. Wife then left a threatening letter on the windshield of Bostic's car. Next, Appellant drove Wife to Burnside's residence. Wife placed a second threatening letter in Burnside's mailbox and placed the second garbage bag on Burnside's front porch.

Robin Taylor, a SLED employee, also testified at Appellant's trial. Taylor described the DNA analysis she performed on a swab from the severed hand. Taylor matched the DNA from this swab to the DNA from swabs of blood collected from (1) a wall near the ceiling in a bathroom at Appellant's residence; (2) a wall on the right side of the medicine cabinet in Appellant's bathroom; (3) a latex glove found on the floor of Wife's van; and (4) the p-trap of the shower drain in Appellant's bathroom.[4]

The jurors deliberated for over four hours. The foreperson then sent a note to the trial court indicating the jurors were unable to reach a unanimous decision on one of the charges against Appellant. The trial court sent the members of the jury home for the night. The next morning, the trial court provided the jury with an *Allen* instruction before they resumed their deliberations.[5] A little over one hour later, the jury returned a verdict of guilty on both charges against Appellant. The trial court sentenced Appellant to life in prison. This appeal followed.

---

4. The record does not indicate when the swabs were taken from Appellant's bathroom and Wife's van.

5. *See Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896) (finding no error in a jury instruction admonishing jurors to give due deference to the opinions of their fellow jurors).

568

## ISSUES ON APPEAL

1. Did the trial court's refusal to provide the jury with the circumstantial evidence instruction quoted in *State v. Edwards* violate Appellant's right to require the prosecution to prove his guilt beyond a reasonable doubt?

2. Did the trial court err in failing to strike the testimony of Captain Kellet, the State's fingerprint expert, or, in the alternative, to grant a mistrial, where Appellant's counsel did not receive a copy of Captain Kellet's file prior to trial?

3. Did the trial court err in declining to grant Appellant enough recess time to hire an expert to review Captain Kellet's file?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court is bound by the circuit court's factual findings unless they are clearly erroneous. *Id.*

## LAW/ANALYSIS

### I. Jury Instruction

Appellant maintains the trial court's rejection of his proposed circumstantial evidence instruction, based on the instruction approved in *State v. Edwards,*[6] violated his right to require the prosecution to prove his guilt beyond a reasonable doubt. Appellant argues the instruction given confused the jury regarding how to evaluate circumstantial evidence. We find no reversible error.[7]

---

6. 298 S.C. 272, 274–76, 379 S.E.2d 888, 889 (1989), *abrogated by State v. Cherry,* 361 S.C. 588, 595–606, 606 S.E.2d 475, 478–82 (2004).

7. The State asserts Appellant failed to preserve his argument that the trial court's circumstantial evidence instruction violated a constitutional right. The State argues trial counsel's request to provide the jury with the *Edwards* instruction was based on state law rather than constitutional law. Given the constitutional foundation on which our state's circumstantial evidence jurisprudence is based, it is likely that trial counsel's reference to recent case law developments sufficiently apprised the trial court of the constitutional component of his request

"In reviewing jury charges for error, this Court considers the trial court's jury charge as a whole and in light of the evidence and issues presented at trial." *State v. Logan,* 405 S.C. 83, 90, 747 S.E.2d 444, 448 (2013) (citation omitted). "A jury charge is correct if, when read as a whole, the charge adequately covers the law." *Id.* at 90–91, 747 S.E.2d at 448. "A jury charge that is substantially correct and covers the law does not require reversal." *Id.* (citation and quotation marks omitted). "Jury instructions should be considered as a whole, and if as a whole, they are free from error, any isolated portions which may be misleading do not constitute reversible error." *Id.* at 94 n. 8, 747 S.E.2d at 449 n. 8 (citation omitted). "Generally, the trial judge is required to charge only the current and correct law of South Carolina." *State v. Brown,* 362 S.C. 258, 261, 607 S.E.2d 93, 95 (Ct.App.2004). "To warrant reversal, a trial judge's refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant." *Id.* at 262, 607 S.E.2d at 95.

In *Edwards,* our supreme court quoted the circumstantial evidence standard "to be charged for use by the jury in its deliberation." 298 S.C. at 275, 379 S.E.2d at 889.

Under this test, the jury may not convict unless:

every circumstance relied upon by the State be proven beyond a reasonable doubt; and ... all of the circumstances so proven be consistent with each other and taken together, *point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis.* It is not sufficient that they create a probability, though a strong one and if, assuming them to be true they may be accounted for upon any reasonable hypothesis which does not include the guilt of the accused, the proof has failed.

for the *Edwards* instruction. Further, any doubt concerning whether Appellant's "reasonable doubt" argument was preserved for review should be resolved in favor of finding the argument preserved. *See Atl. Coast Builders & Contractors, LLC v. Lewis,* 398 S.C. 323, 330, 730 S.E.2d 282, 285 (2012) (recognizing "it may be good practice for [the appellate court] to reach the merits of an issue when error preservation is doubtful"); *id.* at 333, 730 S.E.2d at 287 (Toal, C.J., concurring) ("[W]here the question of preservation is subject to multiple interpretations, any doubt should be resolved in favor of preservation.").

*Id.* (emphasis added) (quoting *State v. Littlejohn,* 228 S.C. 324, 328, 89 S.E.2d 924, 926 (1955)). However, in *State v. Grippon,* the court recommended that once a proper reasonable doubt instruction is given, the following instruction be given:

> There are two types of evidence which are generally presented during a trial—direct evidence and circumstantial evidence. Direct evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact. The law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all the evidence in the case. After weighing all the evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find [the defendant] not guilty.

327 S.C. 79, 83–84, 489 S.E.2d 462, 464 (1997).

In *State v. Cherry,* 361 S.C. 588, 597, 606 S.E.2d 475, 480 (2004), our supreme court held that in cases relying, in whole or in part, on circumstantial evidence, South Carolina courts **must** use the jury charge recommended in *Grippon. Cherry* also eliminated the "reasonable hypothesis" language found in the *Edwards* instruction. *Cherry,* 361 S.C. at 601, 606 S.E.2d at 482 ("[T]he reasonable hypothesis charge merely serves to confuse juries by leading them to believe that the standard for measuring circumstantial evidence is different than that for measuring direct evidence when, in fact, it is not."). Notably, other language from the *Edwards* instruction was recently reaffirmed, slightly modified, and recommended in future jury instructions. *See State v. Logan,* 405 S.C. 83, 99, 747 S.E.2d 444, 452 (2013) ("[T]o the extent the State relies on circumstantial evidence, all of the circumstances must be consistent with each other, and when taken together, point conclusively to the guilt of the accused *beyond a reasonable doubt.... If these circumstances merely portray the defendant's behavior as suspicious,* the proof has failed." (emphases added)).

Specifically, the *Logan* court set forth the following instruction to be given to the jury, in addition to a proper reasonable doubt instruction, when so requested by a defendant:

There are two types of evidence which are generally presented during a trial—direct evidence and circumstantial evidence. Direct evidence directly proves the existence of a fact and does not require deduction. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact.

Crimes may be proven by circumstantial evidence. The law makes no distinction between the weight or value to be given to either direct or circumstantial evidence, however, to the extent the State relies on circumstantial evidence, *all of the circumstances must be consistent with each other*, and when taken together, point conclusively to the guilt of the accused beyond a reasonable doubt. *If these circumstances merely portray the defendant's behavior as suspicious, the proof has failed.*

The State has the burden of proving the defendant guilty beyond a reasonable doubt. This burden rests with the State regardless of whether the State relies on direct evidence, circumstantial evidence, or some combination of the two.

*Id.* at 99, 747 S.E.2d at 452 (emphases added). The court hastened to add: "This holding does not prevent the trial court from issuing the circumstantial evidence charge provided in *Grippon* and *Cherry*. However, trial courts may not exclusively rely on that charge over a defendant's objection." *Id.* at 100, 747 S.E.2d at 452–53. Nonetheless, the *Logan* court ultimately concluded any error in the trial court's jury instructions was harmless beyond a reasonable doubt because the trial court "clearly instructed the jury regarding the reasonable doubt burden of proof" and its jury instruction, "as a whole, properly conveyed the applicable law." *Logan,* 405 S.C. at 94 n. 8, 747 S.E.2d at 449 n. 8 (citations omitted).

In the instant case, the trial court gave the following jury instruction on circumstantial evidence:

Now, there are two types of evidence which are generally presented during a trial. And they are known as direct evidence and circumstantial evidence. Direct evidence is the testimony of a person who claims to have actual knowledge of a fact, such as an eye witness [sic]. It is evidence which immediately establishes the main fact sought to be proven. Circumstantial evidence is proof of a chain of facts

and circumstances indicating the existence of the main fact. It is evidence which immediately establishes collateral facts from which the main fact may be inferred. Circumstantial evidence is based on inference and not on personal knowledge or observation. The law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. *You should weigh all of the evidence in the case. After weighing all of the evidence, if you are not convinced of the guilt of the Defendant beyond a reasonable doubt, then you should find the Defendant not guilty.*

(emphasis added). This instruction is virtually identical to the *Grippon* instruction. 327 S.C. at 83–84, 489 S.E.2d at 464.

■ The State argues that at the time of Appellant's trial, the "relevant precedent dictated that only the *Grippon* charge be used." The State points out that the *Logan* opinion was published while the appeal in the instant case was pending. In response, Appellant maintains that *Logan* applies retroactively to his trial, citing *State v. Belcher*, 385 S.C. 597, 612–13, 685 S.E.2d 802, 810 (2009) and *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), for the proposition that a new rule for the conduct of criminal prosecutions must be applied retroactively to all cases pending on direct review or not yet final. We agree that *Griffith* requires the application of *Logan* to cases pending on appeal at the time the *Logan* opinion was published. Nevertheless, this court is constrained to affirm the trial court's denial of Appellant's request to give the *Edwards* instruction for two reasons.

■ First, Appellant's requested instruction contains the following language:

[Y]ou may not convict a defendant unless . . . all of the circumstances . . . taken together, point conclusively to the guilt of the accused *to the exclusion of every other reasonable hypothesis.* It is not sufficient that the circumstances create a probability, even if it is a strong one. If, assuming the circumstances are true, there is a reasonable hypothesis which does not include the guilt of the accused, the proof has failed.

Our supreme court has excluded the "reasonable hypothesis" language from the circumstantial evidence instruction now

required by *Logan,* recognizing that this language is unnecessary. *See Logan,* 405 S.C. at 99–100, 747 S.E.2d at 452–53 (setting forth the instruction to be given by trial courts when requested by a defendant); *id.* at 100, 747 S.E.2d at 452 (citing *Grippon,* 327 S.C. at 83–84, 489 S.E.2d at 463–64).

█ Second, any error in the omission of other language from the *Logan* instruction was harmless beyond a reasonable doubt because the trial court's instruction, as a whole, properly conveyed the applicable law. *See Logan,* 405 S.C. at 94 n. 8, 747 S.E.2d at 449 n. 8 ("[E]rroneous jury instructions are subject to a harmless error analysis."). The trial court provided the following instruction as to the State's burden of proof:

> Now, Clarence Jenkins has pled not guilty to these indictments. And that plea puts the burden on the State to provide [sic] the Defendant guilty. A person charged with committing a criminal offense in South Carolina is never required to prove themselves innocent. And I charge you that it is a cardinal and important rule of the law that a defendant in a criminal trial will always be presumed to be innocent of the crime for which an indictment has been issued unless and until guilt has been proven by evidence satisfying you of guilt beyond a reasonable doubt.
>
> Now, reasonable doubt is the kind of·doubt which would cause a reasonable person to hesitate to act. And reasonable doubt may arise from the evidence which is in the case or from the lack or absence of evidence in the case. And you, the jury, must determine whether or not reasonable doubt exists as to the guilt of this Defendant. The State has the burden of proving each and every element of a crime beyond a reasonable doubt. And any reasonable doubt that you may have in your deliberations should be resolved in favor of the Defendant.

We find this reasonable doubt instruction to be a correct statement of the law. *See State v. Jones,* 343 S.C. 562, 578, 541 S.E.2d 813, 821 (2001) (holding a jury instruction explaining, "A reasonable doubt is the kind of doubt that would cause a reasonable person to hesitate to act" was "a correct statement of South Carolina law."). Further, the trial court's instruction on circumstantial evidence (*see supra* ) immediately followed the reasonable doubt instruction. As our supreme court ultimately concluded in *Logan,* we conclude the trial

court's instructions in the present case, as a whole, properly conveyed the applicable law. *See Logan*, 405 S.C. at 94 n. 8, 747 S.E.2d at 449 n. 8 ("A trial court's decision regarding jury charges will not .be reversed where the charges, as a whole, properly charged the law to be applied." (citation omitted)); *id.* (concluding any error in the trial court's jury instructions was harmless because the trial court "clearly instructed the jury regarding the reasonable doubt burden of proof" and its jury instruction, "as a whole, properly conveyed the applicable law." (citations omitted)). Therefore, we affirm the denial of Appellant's request to provide the *Edwards* instruction.

## II. Withholding of Evidence

 Appellant challenges the trial court's refusal to grant him relief based on the prosecution's failure to produce Captain Kellet's file documenting her identification of Victim's fingerprints, citing Rule 5 of the South Carolina Rules of Criminal Procedure. Appellant argues this alleged Rule 5 violation compromised his ability to fully impeach the credibility of Captain Kellet's testimony, and, thus, the trial court should have stricken her testimony or granted a mistrial. We disagree.

Rule 5(a)(1)(C), SCRCrimP states:

Upon request of the defendant the prosecution shall *permit the defendant to inspect and copy* books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the prosecution, and which are material to the preparation of his defense or are intended for use by the prosecution as evidence in chief at the trial, or were obtained from or belong to the defendant.

(emphasis added).

 Further, "[t]he admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Tennant*, 383 S.C. 245, 254, 678 S.E.2d 812, 816 (Ct.App.2009), *modified on other grounds*, 394 S.C. 5, 21, 714 S.E.2d 297, 305 (2011) (citation and quotation marks omitted). Likewise, "[t]he granting or refusing of a motion for a mistrial lies within the sound discretion of the trial court[,] and its ruling will not be disturbed on appeal absent an abuse of discretion amounting to an error of law." *State v. Harris*, 340 S.C. 59, 63, 530 S.E.2d 626, 627–28 (2000)

(citation omitted). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Tennant*, 383 S.C. at 254, 678 S.E.2d at 816 (citation and quotation marks omitted).

To warrant either a mistrial or reversal based on an evidentiary ruling, the complaining party must prove both the error of the ruling and the resulting prejudice. *Id.* at 254, 678 S.E.2d at 816–17 (as to the admission or exclusion of evidence); *Harris*, 340 S.C. at 63, 530 S.E.2d at 628 (as to a mistrial). "To prove prejudice, the complaining party must show there is a reasonable probability that the jury's verdict was influenced by the challenged evidence or lack thereof." *Tennant*, 383 S.C. at 254, 678 S.E.2d at 817 (citation and quotation marks omitted).

According to the solicitor, he conferred with Captain Kellet regarding the contents of her file in response to defense counsel's discovery requests. The solicitor then contacted defense counsel and told him Captain Kellet's file could possibly include some AFIS-related documents. However, defense counsel declined to review them. In fact, for approximately four years prior to trial, Appellant's defense team was aware that fingerprints from the severed hands had been run through AFIS. Moreover, on two occasions prior to trial, defense counsel was accompanied by a representative of the solicitor's office to visit the property and evidence section of the forensic division of the Greenville County Department of Public Safety and was offered the opportunity to visit the latent print section. Yet, nothing in the record indicates that defense counsel attempted to interview Captain Kellet or review any AFIS-related documents prior to trial. Under these circumstances, we find no Rule 5 violation.

Additionally, Appellant did not contest Victim's identity at trial—defense counsel referenced Victim's name several times while cross-examining Wife. Therefore, we find the trial court's failure to grant the requested relief did not result in any unfair prejudice to Appellant.

Based on the foregoing, the trial court properly declined to strike Captain Kellet's testimony or declare a mistrial. *See Tennant*, 383 S.C. at 254, 678 S.E.2d at 816 ("The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." (citation and

quotation marks omitted)); *Harris*, 340 S.C. at 63, 530 S.E.2d at 627–28 ("The granting or refusing of a motion for a mistrial lies within the sound discretion of the trial court[,] and its ruling will not be disturbed on appeal absent an abuse of discretion amounting to an error of law." (citation omitted)).

## III. Lengthy Recess

Alternatively, Appellant argues the trial court should have granted him a long recess or short continuance to obtain the assistance of an expert qualified to evaluate the documents in Captain Kellet's file. We disagree.

Because the defense team was aware of Captain Kellet's fingerprint analysis and the possible existence of AFIS-related documents for 'years prior to trial, the trial court properly declined to grant any further delay in the trial. *See State v. Patterson*, 367 S.C. 219, 230, 625 S.E.2d 239, 245 (Ct.App.2006) ("The conduct of a criminal trial is left largely to the sound discretion of the trial judge, who will not be reversed in the absence of a prejudicial abuse of discretion.").

## CONCLUSION

Accordingly, Appellant's convictions are
**AFFIRMED.**

SHORT, J., and CURETON, A.J., concur.