747 S.E.2d 444

**The STATE, Respondent,**

v.

**Clarence LOGAN, Jr., Appellant.**

**Appellate Case No. 2011–194406.**

**No. 27296.**

Supreme Court of South Carolina.

Heard April 2, 2013.

Decided Aug. 14, 2013.

84

Appellate Defender LaNelle Cantey DuRant, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Mark Reynolds Farthing, of Columbia, for Respondent.

Chief Justice TOAL.

Clarence Logan (Appellant) challenges his conviction for attempted criminal sexual misconduct in the first degree (CSC–First). Appellant argues that the trial court erred in providing the circumstantial evidence charge this Court articulated in *State v. Grippon*, 327 S.C. 79, 489 S.E.2d 462 (1997). According to Appellant, this charge is no longer valid in light of this Court's decisions in *State v. Bostick*, 392 S.C. 134, 708 S.E.2d 774 (2011) and *State v. Odems*, 395 S.C. 582, 720 S.E.2d 48 (2011). We affirm Appellant's conviction.

## FACTUAL/PROCEDURAL BACKGROUND

On May 10, 2010, the Charleston County Grand Jury indicted Appellant for attempted CSC–First in violation of section 16–3–652 of the South Carolina Code and "strong-arm" robbery (SAR) in violation of section 16–11–325 of the South Carolina Code.[1] S.C.Code Ann. §§ 16–3–652, 16–11–325 (2003). Appellant proceeded to trial on June 8, 2011.

At trial, Jarvia O'Neal testified that in the early morning of February 4, 2010, at approximately 1:45 a.m., O'Neal went to the Lovey Dovey, "a social club where you can eat crabs," with two friends, Andrea Bell and Virgil Washington. O'Neal testified that at some point during her visit Appellant approached her and made unwanted sexual advances. Appellant appeared heavily intoxicated. O'Neal rebuffed Appellant's advances, and then made her way to the restroom. As O'Neal entered the restroom, Appellant forced his way inside with her. According to O'Neal, Appellant proceeded to choke her,

---

1. "The common law offense of robbery is a felony. Upon conviction, a person must be imprisoned not more than fifteen years." S.C.Code Ann. § 16–11–325 (2003); *see also State v. Brown*, 274 S.C. 48, 49, 260 S.E.2d 719, 720 (1979) (holding that common-law robbery is essentially the commission of larceny with force).

and attempted to sexually assault her. Appellant also punched O'Neal several times. O'Neal fought back in an attempt to fend off Appellant's attack. O'Neal then kicked Appellant between his legs, and was only then able to remove herself from the situation. During the attack, Appellant removed O'Neal's driver's license and twenty dollars from her purse. Appellant exited the restroom shortly after O'Neal kicked him, and O'Neal departed the restroom after Appellant. O'Neal testified that she did not notify police or go to the hospital immediately following the attack because she was afraid. Later, on the afternoon of February 4, O'Neal visited the hospital to receive treatment for her injuries. O'Neal provided the police with a statement during her hospital visit.

O'Neal then contacted Aaron Green, the Lovey Dovey's manager. Green informed O'Neal that while he did not personally know Appellant, he knew Appellant used the nickname "Blackout," and owned a blue Thunderbird. O'Neal supplied police with this information. O'Neal noticed a blue Thunderbird near her home on several occasions following the attack, and on at least one of those occasions, O'Neal recognized Appellant as the vehicle's driver. O'Neal notified police on each occasion. Police contacted O'Neal and asked her to choose Appellant's photograph out of a group of six photographs. O'Neal chose Appellant.[2]

Andrea Bell testified that O'Neal excused herself to the restroom at some point during their visit to the Lovey Dovey. Bell stated that a short time later she observed a "young" man, wearing a white t-shirt, walking away from the bathroom, and "pulling up his pants."[3] Bell then overheard someone inquire whether "something going [sic] on in the bathroom," prompting Bell to walk over to the restroom. Bell described O'Neal's demeanor, stating, "All I see was she was upset, and her face was swollen. Like I think it was her eye and her lip that were swollen." Bell testified that she could

---

2. Omar Faison, a North Charleston police officer at the time of the incident, testified that he presented O'Neal with pictures of six individuals with the same height, weight, and physical features, and that O'Neal identified Appellant without hesitation.

3. At trial, Bell could not identify Appellant as the "young" man she observed that night.

not identify Appellant as the man she observed coming out of the bathroom that night. Bell assisted O'Neal with her injuries, but did not discuss anything that might have happened between O'Neal and Appellant.

Virgil Washington testified that he knew O'Neal, but did not consider her a friend. Washington testified that on the night of the attack he merely provided transportation for O'Neal at the request of his friend, Aaron Green. According to Washington, he noticed a commotion near the restroom, and when O'Neal exited the restroom she "was highly upset." Washington also observed blood on O'Neal's face. O'Neal mentioned to Washington that Appellant hit her. Washington testified that in addition to the blood on O'Neal's face, he later observed at least two cuts to her face.

Aaron Green testified that he observed Appellant and O'Neal conversing on the night of the incident. Later, Green observed Appellant and O'Neal exit from the same bathroom, and Appellant stated that he was looking for his cell phone. Green testified that O'Neal told him she and Appellant had a "confrontation," but that she did not want Green to notify police. Green stated he observed O'Neal's hair was "wild" and O'Neal had a bruise and some bleeding on her face. In the days following the incident, O'Neal disclosed to Green that Appellant attempted to sexually assault her, and Green provided O'Neal with a description of Appellant's vehicle.

Alex Gray, a patrolman with the North Charleston Police Department responded to Roper Hospital where O'Neal sought treatment following the attack. Gray testified that O'Neal had a black eye, a laceration across the bridge of her nose and the left side of her face, cuts on the inside of her mouth, and a knot on the right side of her head. Gray testified that O'Neal provided him with a description of the incident, as well as Appellant's nickname and physical description.[4] At the conclusion of the State's case, Appellant's trial

---

4. The State also presented the testimony of Marquise O'Neal and Rhonda Deveaux, O'Neal's family members. These witnesses testified that they observed a vehicle matching the description of Appellant's in the immediate vicinity of O'Neal's residence. Additionally, Craig McAlheney, an officer with the North Charleston Police Department testified that he responded to a telephone call from O'Neal. O'Neal explained to McAlheney that Appellant's vehicle drove in front of her house, and she

counsel moved for a directed verdict, stating, "I would move for a directed verdict pursuant to I believe it's criminal Rule 19." The trial court denied Appellant's motion. Following Appellant's decision not to testify, the trial court discussed jury instructions with the parties. Appellant's trial counsel raised an objection touching on the trial court's proposed circumstantial evidence charge, stating:

> I have an objection to—I know it's not routine, but the now standard direct and circumstantial evidence charge, particularly the portion that says ... the law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence. I think that after our Supreme Court opinion in *Bostick* that came out, I want to say, earlier this year where the Supreme Court said that the trial court should have directed a verdict because the case was entirely circumstantial, they appealed to four different pieces of circumstantial evidence ... that line of cases, *Shropp [Schrock]*[5] and *Arnold* [361 S.C. 386, 605 S.E.2d 529 (2004)] and now *Bostick*, they are now dealing with this jury charge, so I guess what I'm asking is to argue against precedent to say that the standard charge, I think this is from *Ripon [Grippon]*[6] that says that the direct and circumstantial evidence are equally—

The trial court interrupted the argument, stating, "I'm not familiar with the exact case you're referring to, but I usually on—there is a difference when it comes to directed verdict between direct and circumstantial evidence." The trial court then acknowledged that circumstantial evidence had to be "substantial," and that he was not sure that "they," presumably this Court, "had changed that rule." Appellant's trial counsel responded:

> In case they want to, I have to give them the opportunity to do it, and I think the proposition—the law makes absolutely

provided McAlheney with a physical description of the driver, and what O'Neal believed to be the vehicle's license tag number.

5. Appellant's trial counsel appears to have been referring to *State v. Schrock*, 283 S.C. 129, 322 S.E.2d 450 (1984).

6. Appellant's trial counsel appears to have been referring to *Grippon.*

no distinction between the weight or value to be given to either direct or circumstantial evidence is no longer valid.

The trial court denied the motion, and then delivered the following instruction regarding direct and circumstantial evidence:

There are two types of evidence generally presented in a trial. There is direct evidence and circumstantial evidence. Direct evidence is testimony of a person who claims to have actual knowledge of a fact, such as an eyewitness, and this is evidence which immediately establishes the main fact to be proved. Circumstantial evidence is proof of a chain of facts and circumstances which indicate the existence of a fact, and this is evidence which immediately establishes collateral facts from which a main fact may be inferred. Circumstantial evidence is based on inference and not on personal knowledge or observation. The law makes absolutely no distinction between the weight or value to be given either direct or circumstantial evidence, nor is a greater degree of certainty required of circumstantial evidence than direct evidence. You should weigh all the evidence in this case, and, after weighing the testimony, if you are not convinced of the defendant's guilt beyond a reasonable doubt, you must find the defendant not guilty.

The jury found Appellant guilty of attempted CSC–First but not guilty of SAR. The trial court sentenced Appellant to ten years' imprisonment. On June 15, 2011, Appellant's trial counsel filed a notice of appeal. This Court certified the case for review pursuant to Rule 204(b), SCACR.

## ISSUE PRESENTED

Did the trial court err in providing a circumstantial evidence jury instruction consistent with this Court's holding in *Grippon?*

## STANDARD OF REVIEW

In reviewing jury charges for error, this Court considers the trial court's jury charge as a whole and in light of the evidence and issues presented at trial. *State v. Brandt,* 393 S.C. 526, 549, 713 S.E.2d 591, 604 (2011). A jury charge is

correct if, when read as a whole, the charge adequately covers the law. *Id.* "A jury charge that is substantially correct and covers the law does not require reversal." *Id.* (citing *State v. Foust*, 325 S.C. 12, 16, 479 S.E.2d 50, 52 (1996)).

## LAW/ANALYSIS

Appellant argues that this Court's decisions in *State v. Bostick*, 392 S.C. 134, 708 S.E.2d 774 (2011), and *State v. Odems*, 395 S.C. 582, 720 S.E.2d 48 (2011), invalidated the circumstantial evidence jury charge this Court articulated and approved in *State v. Grippon*, 327 S.C. 79, 489 S.E.2d 462 (1997), and *State v. Cherry*, 361 S.C. 588, 606 S.E.2d 475 (2005). We disagree.

### I. Appellant's Claim

This Court's decisions in *Bostick* and *Odems* centered on whether the State presented substantial circumstantial evidence, so as to survive a directed verdict motion, that the defendant committed the crime charged.

In *Bostick*, the fire department arrived at the victim's house on a Sunday afternoon after her house caught fire. 392 S.C. at 136, 708 S.E.2d at 775. Firefighters discovered the victim's body in the house. *Id.* Although the victim had been struck in the head with a blunt force object, she ultimately expired as a result of carbon monoxide poisoning from the fire. *Id.* Two days later, investigators discovered the following items in a burn pile at a neighboring house belonging to Bostick's mother: two sets of car keys, toe nail clippers, pens, burned paper, a metal clasped ring of a purse, and a watch. *Id.* at 137, 708 S.E.2d at 775. All of these items belonged to the victim. *Id.* Investigators later determined that the person responsible for the fire at the victim's house used a heavy petroleum product, such as kerosene or diesel fuel. *Id.* Bostick's mother stated that she did not use either of these products in the burn pile. *Id.* Investigators interviewed Bostick, and asked for his clothing and shoes. *Id.* Blood was found on Bostick's jeans, but a DNA analysis proved inconclusive. *Id.*, 708 S.E.2d at 775–76 ("[T]he agent who reviewed the DNA analysis findings ... testified that while ninety-nine percent of the population could be excluded as contributing to the sample, she was unable to

determine whether the blood sample actually came from [the victim].").   However, a chemical analysis of Bostick's shoes revealed a fresh gasoline pattern.  *Id.,* 708 S.E.2d at 776. Bostick moved for a directed verdict at the close of the State's case, which the trial court denied.  *Id.*

Bostick argued on appeal that the evidence submitted did not constitute substantial circumstantial evidence necessary to submit the case to the jury.  *Id.* at 138–39, 708 S.E.2d at 776. This Court agreed, and found that the State's evidence raised only a suspicion of Bostick's guilt.  *Id.* at 141, 708 S.E.2d at 778.

In *Odems,* this Court addressed the same substantial circumstantial evidence issue.   In that case, the defendant appealed his convictions for first degree burglary, grand larceny, criminal conspiracy, and malicious injury.  *Odems,* 395 S.C. at 585, 720 S.E.2d at 50.  At trial, the State relied solely on three pieces of circumstantial evidence:  (1) the fact that less than ninety minutes after the burglary, police located the defendant in the get-away vehicle with the burglars and the stolen goods; (2) the defendant fled from law enforcement;  and (3) the defendant asked an uninvolved person to lie to authorities on his behalf.  *Id.* at 588, 720 S.E.2d at 51.   This Court found that even when viewed in the light most favorable to the State, the circumstantial evidence did not reasonably tend to prove the defendant's guilt.  *Id.* The Court illustrated this point through an analogy to what is commonly referred to as the "traditional" circumstantial evidence *jury* charge:

> The traditional circumstantial evidence definition illustrates the deficiency in the State's evidence against [the defendant].   This definition provided that if the State relies on circumstantial evidence to prove its case, the jury may not convict the defendant unless:
>
>> Every circumstance relied upon by the State be proven beyond a reasonable doubt; and ... all of the circumstances proven be consistent with each other and taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis.  Despite the Court's abandonment of the use of this particular definition as a jury charge in *State v. Cherry,* the definition illustrates the lack of evidence against [the

defendant]. The State's key circumstantial evidence: (1) [The defendant's] location in the getaway car a relatively short time after the robbery; (2) [The defendant's] flight from law enforcement; and (3) [The defendant's] attempt to enlist the assistance of an uninvolved individual, do not point to his guilt for the crimes charged to the exclusion of every other reasonable hypothesis—namely, the notion that he did in fact join [the defendants] at a gas station following the crime.

*Id.* at 590–91, 720 S.E.2d at 52–53 (citing *State v. Hernandez,* 382 S.C. 620, 626 n. 2, 677 S.E.2d 603, 606 n. 2 (2009); *State v. Edwards,* 298 S.C. 272, 274–76, 379 S.E.2d 888, 889 (1989), *abrogated by Cherry,* 361 S.C. at 595–606, 606 S.E.2d at 478–82).

Both *Bostick* and *Odems* analyzed the standard relied on by the trial court in assessing circumstantial evidence, and not the standard relied on by jurors as is the issue *sub judice.* *See, e.g., State v. Littlejohn,* 228 S.C. 324, 328, 89 S.E.2d 924, 926 ("It must be remembered, too, that there is one test by which circumstantial evidence is to be measured by the jury in its deliberations, and quite another by which it is to be measured by the trial judge in ... consideration of the accused's motion for a directed verdict."). Additionally, neither *Bostick* or *Odems* addresses the *Grippon* charge's validity. *See Bostick,* 392 S.C. at 142, 708 S.E.2d at 778 ("The evidence presented by the State raised, at most, a mere suspicion that Bostick committed this crime. Under settled principles, the trial court should grant a directed verdict motion when the evidence presented merely raises a suspicion of guilt." (citation omitted)). In point of fact, the *Odems* opinion notes explicitly that this Court abandoned the traditional circumstantial evidence charge, and that the Court referred to the charge merely as an illustration of the "deficiency in the State's evidence" against the defendant in that case. *See Odems,* 395 S.C. at 592, 720 S.E.2d at 53 ("The State asks this Court to uphold [the defendant's] convictions based on evidence which does not satisfy the standard adopted by this Court regarding the proof necessary in a circumstantial evidence case." (citing *Bostick, supra,* identifying funda-

mental opinions analyzing the circumstantial evidence standard)).[7]

■ Accordingly, the trial court did not err in providing a circumstantial evidence charge consistent with *Grippon*.[8]

## II. The Circumstantial Evidence Charge

The objection raised by Appellant's trial counsel provides this Court with an opportunity to revisit our past discussions regarding the circumstantial evidence charge, and articulate for the benefit of the bench and bar a circumstantial evidence

---

7. *See also Hernandez*, 382 S.C. at 625 n. 2, 677 S.E.2d at 605–06 n. 2 ("Although in *State v. Cherry* . . . the Court abandoned [the traditional circumstantial evidence] charge and held that it may confuse a jury by leading it to believe that the standard for measuring circumstantial evidence is different from that for measuring direct evidence, *it nonetheless illustrates the lack of evidence* against Petitioners." (emphasis added)).

8. Additionally, erroneous jury instructions are subject to a harmless error analysis. *State v. Belcher*, 385 S.C. 597, 611, 685 S.E.2d 802, 809 (2009). Jury instructions should be considered as a whole, and if as a whole, they are free from error, any isolated portions which may be misleading do not constitute reversible error. *State v. Aleksey*, 343 S.C. 20, 27, 538 S.E.2d 248, 251 (2000). A trial court's decision regarding jury charges will not be reversed where the charges, as a whole, properly charged the law to be applied. *State v. Burkhart*, 350 S.C. 252, 263, 565 S.E.2d 298, 304 (2002).

  In the instant case, the trial court clearly instructed the jury regarding the reasonable doubt burden of proof, explaining:

  Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases, the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence you are firmly convinced that the defendant is guilty of the crime charged, then you must find the defendant guilty. If, on the other hand, you think there is a real possibility that the defendant is not guilty, then you must give the defendant the benefit of the doubt and find him not guilty. . . . You should weigh all the evidence in this case, and, after weighing the testimony, if you are not convinced of the defendant's guilt beyond a reasonable doubt, you must find the defendant not guilty. . . . The burden of proof remains on the state to prove guilt beyond a reasonable doubt.

  The trial court's jury instruction, as a whole, properly conveyed the applicable law. *State v. Rye*, 375 S.C. 119, 123, 651 S.E.2d 321, 323 (2007); *Aleksey*, 343 S.C. at 27, 538 S.E.2d at 251. Thus, any conceivable error was harmless beyond a reasonable doubt.

charge reflecting the proper balance between the State's burden and the jury's responsibility.

This Court's circumstantial evidence jurisprudence centers primarily on the distinctions between direct and circumstantial evidence. Beginning with *State v. Littlejohn*, 228 S.C. 324, 89 S.E.2d 924 (1955), this Court recognized that the jury's evaluation of circumstantial evidence requires a particular and discrete instruction. In *Littlejohn*, the Court explained,

> [I]t is necessary that every circumstance relied upon by the state be proven beyond a reasonable doubt; and that all of the circumstances so proven be consistent with each other and, taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis. It is not sufficient that they create a probability, though a strong one; and if, assuming them to be true, they may be accounted for upon any reasonable hypothesis which does not include the guilt of the accused, the proof has failed.

*Id.* (citing *State v. Kimbrell*, 191 S.C. 238, 242, 4 S.E.2d 121, 122 (1939)); *see Edwards*, 298 S.C. at 275, 379 S.E.2d at 889 (clarifying the proper standard trial courts should utilize in ruling on directed verdict motions in circumstantial evidence cases),[9] *abrogated by Cherry*, 361 S.C. at 601–02, 606 S.E.2d at 482.

■ However, in *Grippon*, the majority of the Court determined that once a trial court provides a proper reasonable doubt instruction, the jury need not be instructed regarding whether the circumstantial evidence proved the defendant's guilt to the exclusion of every reasonable hypothesis other than guilt. *Grippon*, 327 S.C. at 83–84, 489 S.E.2d at 464 (relying on *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Russell*, 971 F.2d 1098, 1108–09 (4th Cir.1992), *cert. denied*, 506 U.S. 1066, 113 S.Ct. 1013, 122 L.Ed.2d 161 (1993)).[10]

---

9. *Edwards v. South Carolina*, 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed.2d 196 (1989) (denying petition for writ of certiorari to this Court).

10. Several courts have followed the Supreme Court's reasoning and found a distinct circumstantial evidence charge unnecessary. *See, e.g., Russell*, 971 F.2d at 1109 ("It is well settled that as long as a proper reasonable doubt instruction is given, a jury need not be instructed that

Thus, the Court recommended that following a proper reasonable doubt instruction, the trial court instruct the jury as follows:

> There are two types of evidence which are generally presented during a trial—direct evidence and circumstantial evidence. Direct evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact. The law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all the evidence in the case. After weighing all the evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find [the defendant] not guilty.

*Id.* at 83–84, 489 S.E.2d at 464 (citing 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 12.04 (4th ed.1992)).

Following *Grippon*, South Carolina trial courts utilized both the traditional circumstantial evidence charge and the *Grip-*

---

circumstantial evidence must be so strong as to exclude every reasonable hypothesis other than guilt."); *Hebron v. Maryland*, 331 Md. 219, 627 A.2d 1029, 1031–37 (1993) (holding that the proposition that a conviction based solely on circumstantial evidence cannot stand unless the circumstances are inconsistent with any reasonably hypothesis of innocence is a matter of the sufficiency of the evidence, rather than jury instruction); *North Carolina v. Adcock*, 310 N.C. 1, 310 S.E.2d 587, 607 (1984) ("We hold that an instruction on circumstantial evidence to the effect that a conviction may not be based upon it unless the circumstances point to guilt and exclude to moral certainty every reasonable hypothesis except that of guilt is unnecessary when a correct instruction on reasonable doubt is given."); *but see Mainor v. Georgia*, 259 Ga. 803, 387 S.E.2d 882, 884 n. 2 (1990) (holding the trial court did not err in providing a circumstantial evidence jury charge providing that circumstantial evidence must be "entirely consistent with the defendant's guilt"); *Brown v. Virginia*, 238 Va. 213, 381 S.E.2d 225, 229–30 (1989) (explaining that the circumstances contemplated by the traditional circumstantial evidence charge are those proved and consistent with each other and the defendant's guilt); *West Virginia v. Bratcher*, 157 W.Va. 918, 206 S.E.2d 408, 410 (1974) (holding the trial court erred in refusing to provide a circumstantial evidence charge and citing with approval precedent relying on the traditional circumstantial evidence charge).

*pon* charge.[11]  However, in *Cherry,* this Court held that the traditional circumstantial evidence charge served to confuse juries by leading them to erroneously believe that the standard for measuring circumstantial evidence is different than that for measuring direct evidence.  *Cherry,* 361 S.C. at 601, 606 S.E.2d at 482.  Thus, the Court held the *Grippon* language as "the sole and exclusive charge to be given in circumstantial evidence cases in this state, along with a proper reasonable doubt instruction." *Id.*

In the instant case, Appellant's trial counsel objected to the trial court's proposed use of the *Grippon* charge, specifically, that portion of the charge instructing that "the law makes absolutely no distinction between the weight or value to be given either direct or circumstantial evidence."  According to trial counsel, that proposition was "no longer valid."

■ But, as observed in *Grippon,* the question is not whether circumstantial evidence carries the same probative weight as direct evidence, it clearly does.  Instead, the pertinent inquiry is the proper means for evaluating circumstantial evidence and how the trial court may best instruct a jury as to its analytical responsibility.  *Grippon,* 327 S.C. at 88, 489 S.E.2d at 466–67 (Toal, J. concurring).  While direct and circumstantial evidence carry the same value, a jury cannot accurately analyze these two types of evidence using identical approaches.

■ Unlike direct evidence, evaluation of circumstantial evidence requires jurors to find that the proponent of the evidence has connected collateral facts in order to prove the proposition propounded—a process not required when evaluating direct evidence.  *Cherry,* 361 S.C. at 603, 606 S.E.2d at 483 (Toal, C.J. dissenting); *cf.* 31A C.J.S. *Evidence* § 5 (2008) ("Direct evidence is evidence that proves the fact in dispute without inference or presumption.").  Analysis of circumstan-

---

11. Following *Grippon,* several of the Court's opinions appeared to retain the traditional circumstantial evidence charge as an alternative to the *Grippon* charge. *See State v. Graddick,* 345 S.C. 383, 388, 548 S.E.2d 210, 212 (2001) (upholding hybrid of traditional and *Grippon* charges); *State v. Needs,* 333 S.C. 134, 156 n. 13, 508 S.E.2d 857, 868 n. 13 (1998) (noting there are two appropriate ways to charge circumstantial evidence).

tial evidence is plainly a more intellectual process. *Grippon*, 327 S.C. at 87–88, 489 S.E.2d at 466 (citing Irene Rosenberg & Yale Rosenberg, *"Perhaps What Ye Say Is Based Only On Conjecture"—Circumstantial Evidence, Then and Now*, 31 Hous. L.Rev., 1371, 1412–13 (1995)). We have previously observed that this process requires two steps: "After concluding that a particular fact is true, the individual juror is called upon to ask: First, can I infer guilt from that fact? Second, if so, is there any reasonable explanation other than guilt?" *Id.* at 87–88, 489 S.E.2d at 466. However, requiring a jury to inquire as to whether there is any other reasonable explanation other than the defendant's guilt comes perilously close to shifting the burden of proof from the State to the defendant. *See, e.g., State v. Aleksey*, 343 S.C. 20, 26, 538 S.E.2d 248, 251 (2000) ("Jury instructions on reasonable doubt which charge the jury to "seek the truth" are disfavored because they '[run] the risk of unconstitutionally shifting the burden of proof to a defendant.'"). Therefore, the circumstantial evidence instruction is best characterized as a construct requiring the State to prove its case beyond a reasonable doubt, while at the same time providing a framework for a "rational" and "cumulative" assessment for guiding the jury's consideration of circumstantial evidence. *See Grippon*, 327 S.C. at 87–88, 489 S.E.2d at 466 (citing Rosenberg, 31 Hous. L.Rev. at 1412–13).[12]

---

**12.** For example, in *Cherry*, the State relied on the following evidence to prove that the defendant's guilt for possession with intent to distribute crack cocaine: (1) the defendant's presence in a vehicle located in a high crime area known for drugs; and (2) police recovered eight rocks of crack cocaine and $322.00, consisting primarily of $20 bills. *Cherry*, 361 S.C. at 604, 606 S.E.2d at 483. The dissent noted that although it is inferable that the defendant intended to distribute crack cocaine, it is equally inferable that he did not:

Possessing drugs in a high crime area "known for drugs" does not automatically make one a drug dealer. It is also reasonable that $322 in cash would be comprised of mostly [$20] bills. Moreover, it is reasonable to conclude that because [the defendant] did not have the requisite amount of crack cocaine on him to give rise to a permissive inference of distribution, he did not intend to distribute crack cocaine. Finally, that there were no drug paraphernalia in the car may or may not establish that [the defendant] was carrying the crack for his personal use.

*Id.* (Toal, C.J., dissenting). Thus, the dissent argued, the lack of direct evidence necessitated a more detailed framework for the jury's assessment:

Trial courts should not be constrained from providing a jury charge encompassing the determinations critical for analyzing circumstantial evidence as it appears in some cases. Additionally, defendants should not be restricted from requesting a jury charge that reflects the requisite connection of collateral facts necessary for a conviction. Thus, we hold that trial courts should provide the following language as a circumstantial evidence charge, in addition to a proper reasonable doubt instruction, when so requested by a defendant:

There are two types of evidence which are generally presented during a trial—direct evidence and circumstantial evidence. Direct evidence directly proves the existence of a fact and does not require deduction. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact.

Crimes may be proven by circumstantial evidence. The law makes no distinction between the weight or value to be given to either direct or circumstantial evidence, however, to the extent the State relies on circumstantial evidence, all of the circumstances must be consistent with each other, and when taken together, point conclusively to the guilt of the accused beyond a reasonable doubt. If these circumstances merely portray the defendant's behavior as suspicious, the proof has failed.

The State has the burden of proving the defendant guilty beyond a reasonable doubt. This burden rests with the State regardless of whether the State relies on direct evidence, circumstantial evidence, or some combination of the two.

*Cf. Littlejohn*, 228 S.C. at 328, 89 S.E.2d at 926 (explaining the traditional circumstantial evidence charge); *Grippon*, 327 S.C.

---

In sum, there is no direct evidence that [the defendant] intended to distribute crack cocaine. Therefore, even if each circumstance were proven beyond a reasonable doubt, jurors must still ask themselves, under the *Edwards* charge, whether there is any other reasonable conclusion other than guilt. Without this instruction, the jury does not know that this critical step in the reasoning process exists. In fact, the jury is without an analytical framework in which to evaluate the evidence. That the circumstances could lead a juror to make reasonable inferences either way highlights the importance of retaining the *Edwards* charge.

*Id.*

at 83–84, 489 S.E.2d at 463–64 (finding a circumstantial evidence jury instruction including "reasonable hypothesis" language unnecessary); *Cherry,* 361 S.C. at 600–02, 606 S.E.2d at 481–82 (holding the *Grippon* charge as the exclusive charge for circumstantial evidence cases). This holding does not prevent the trial court from issuing the circumstantial evidence charge provided in *Grippon* and *Cherry.* However, trial courts may not exclusively rely on that charge over a defendant's objection.

Our *Grippon* and *Cherry* decisions commendably sought to remove confusion from the jury's consideration regarding the weight and value afforded to circumstantial evidence. However, at times, a separate framework is necessary to the jury's analysis of circumstantial evidence. Thus, we modify *Grippon* and *Cherry* to allow the additional language provided above if requested by a defendant.

## CONCLUSION

For the foregoing reasons, Appellant's conviction is

**AFFIRMED.**

HEARN, J. and BEATTY, J., concur.

KITTREDGE, J., concurring in result in a separate opinion in which PLEICONES, J., concurs.

Justice KITTREDGE.

I concur in result. I write separately because I would adhere to, and not overrule, *State v. Grippon,* 327 S.C. 79, 489 S.E.2d 462 (1997), and *State v. Cherry,* 361 S.C. 588, 606 S.E.2d 475 (2005).

The United States Supreme Court has held that there is no difference between direct and circumstantial evidence. *See Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954) (noting that circumstantial evidence is "intrinsically no different from testimonial evidence," for both instances require a jury "to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference," and in both instances, "the jury must use its experience with people and events in

weighing the probabilities"). All of the federal courts and the vast majority of state courts have adopted *Holland.* The reasoning and rationale for following *Holland* was persuasively set forth by this Court in *Cherry,* and I see no basis for rejecting *Holland* and overruling *Grippon* and *Cherry.*

PLEICONES, J., concurs.