**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Shane Isaac Johnson, Appellant.

Appellate Case No. 2017-000873

———————————

Appeal From Richland County
R. Knox McMahon, Circuit Court Judge

———————————

Unpublished Opinion No. 2019-UP-411
Submitted November 1, 2019 – Filed December 31, 2019

———————————

**AFFIRMED**

———————————

Appellate Defender Taylor Davis Gilliam, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Senior Assistant Deputy Attorney General William M. Blitch, Jr., Assistant Attorney General Vann Henry Gunter, Jr., and Solicitor Byron Gipson, all of Columbia, for Respondent.

———————————

**PER CURIAM:** Shane Isaac Johnson appeals his conviction for inflicting great bodily injury upon a child under section 16-3-95(A) of the South Carolina Code

(2015), arguing the trial court erred in (1) denying his motion for an independent psychological examination of the child victim (Child); (2) allowing the State to call an expert witness even though the State failed to give Johnson notice of the purpose of the expert's testimony; (3) denying his motions for a mistrial after the State's expert witness testified that Johnson burned Child as a form of discipline; (4) denying his motion for a directed verdict because the State did not prove he acted with specific intent; (5) admitting cumulative photographs of Child's burns; and (6) not charging the jury with accident or specific intent. We affirm.

**FACTS**

On October 7, 2015, Johnson and Child's mother, Kristin Campbell, brought Child to a Columbia hospital with severe burns caused by hot water from a shower. At the time, Johnson and Campbell were in a relationship and living together, with Child, at Campbell's home. Due to the severity of Child's burns, the hospital transferred Child to a burn center in Augusta, Georgia. On October 19, 2015, after police questioned Johnson and searched his home, Johnson was arrested and charged with infliction of great bodily harm upon a child under South Carolina Code section 16-3-95(A).

At trial, Campbell testified Child has a history of autism spectrum disorder, but is highly functioning. However, Campbell said Child was not allowed to shower by himself. Campbell testified that on the night Child was burned, she was too tired to bathe Child, so Johnson offered to do it. Campbell heard Child screaming, and when she got to the bathroom, she found Child curled up in the shower with Johnson standing over him. Campbell further testified that after she removed Child from the shower, she observed Child's skin peeling off. Finally, Campbell stated that when she asked Child what happened, Child stated Johnson did it to him.

The emergency room physician testified that when he asked Child about the burns, Child look at Johnson and stated, "You did this to me." The director of pediatric critical care, Dr. Richard Cartie, who treated Child at the Augusta Burn Center, testified Child suffered burns on over forty percent of his body and suffered third-degree burns on over twenty-six percent of his body. Dr. Cartie explained the third-degree burns required Child to undergo skin grafting. He further testified it was not possible for Child's burns to be self-inflicted and it was his medical opinion that Child's burns were the result of child abuse.

Johnson was indicted for inflicting great bodily injury upon a child. A trial was held in April 2017. The jury found him guilty as charged, and the court sentenced him to twenty years in prison.

**STANDARD OF REVIEW**

"In criminal cases, we review the decisions of the trial court only for errors of law." *State v. Gilmore*, 396 S.C. 72, 77, 719 S.E.2d 688, 690 (Ct. App. 2011). Thus, "this [c]ourt is limited to determining whether the trial court abused its discretion." *State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009). Accordingly, "[t]his [c]ourt does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the trial court's ruling is supported by any evidence." *Id.*

**LAW/ANALYSIS**

**I.      Independent Examination**

Johnson argues the trial court erred in denying his motion for an independent psychological examination of Child regarding Child's competency to testify at trial. We disagree.

"The question of the competency of witnesses is to be determined by the trial [court]," and "[the trial court's] determination will not be reversed unless a clear showing of abuse of discretion can be made." *State v. Green*, 267 S.C. 599, 603, 230 S.E.2d 618, 619 (1976). "A child's competency to testify depends on showing to the satisfaction of the trial [court] that the child is substantially rational and responsive to the questions asked and is sufficiently aware of the moral duty to tell the truth and the probability of punishment if he lies." *S.C. Dep't of Soc. Servs. v. Doe*, 292 S.C. 211, 219, 355 S.E.2d 543, 547 (Ct. App. 1987). "If the child is mature enough (1) to understand questions and narrate answers, (2) to perceive facts accurately through the medium of the senses, (3) to recall them correctly, (4) to relate a true version of the facts perceived, (5) to know the difference between right and wrong, good and bad, (6) to understand it is right or good to tell the truth and wrong or bad to lie, (7) to be willing to tell the truth, and (8) to fear punishment if he lies, then he is competent to testify." *Id.*

A defendant requesting an independent examination of a child victim must show he has a compelling need for such an examination. *In re Michael H.*, 360 S.C. 540, 547, 602 S.E.2d 729, 732 (2004). When weighing a defendant's need for an

independent examination against a victim's right to privacy, the trial court should consider

> (1) the nature of the examination requested and the intrusiveness inherent in that examination; (2) the victim's age; (3) the resulting physical and/or emotional effects of the examination on the victim; (4) the probative value of the examination to the issue before the court; (5) the remoteness in time of the examination to the alleged criminal act; and (6) the evidence already available for the defendant's use.

*Id.* at 547, 602 S.E.2d at 732-33 (quoting *State v. Delaney*, 417 S.E.2d 903, 907 (W. Va. 1992)).

At his pre-trial hearing, Johnson requested the court order an independent psychological examination of Child.  Johnson argued Child's young age, history of autism spectrum disorder, and previous difficulty differentiating between the truth and a lie were sufficient to show a compelling need for an independent examination of Child's competency.  The trial court, however, denied Johnson's request, stating "there [would] be no psychiatric examination of [Child] at this time" because the court had not yet been able to assess whether Child was competent to testify.

After jury selection, Johnson renewed his motion, and the court heard proffered testimony from Child.  Based on Child's testimony, the trial court found Child was competent to testify and denied Johnson's motion because "[it] d[id] not think, . . . considering all those factors outlined in *Michael H.*, that a psychological examination would assist th[e] court."  Following the proffered testimony, Johnson renewed his motion.

On appeal, Johnson argues all six *Michael H.* factors were satisfied and the trial court should have ordered an independent psychological examination to assess Child's competency.  However, Child's proffered testimony was sufficient for the trial court to find Child was competent to testify because Child could differentiate between the truth and a lie; was committed to being truthful; and was able to recall details of the events resulting in Child's burns.  Thus, we find the trial court did not err in finding a psychological exam was not necessary to determine Child's competency to testify at trial.

## II.  Expert Witness

Johnson argues the trial court erred in allowing the State to call an expert witness when the State failed to give him notice of the purpose of the expert's testimony. We disagree.

Under *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution must "disclose evidence that is: (1) in its possession; (2) favorable to the accused; and (3) material to guilt or punishment." *State v. Kennerly*, 331 S.C. 442, 452, 503 S.E.2d 214, 219-20 (Ct. App. 1998), *aff'd*, 337 S.C. 617, 524 S.E.2d 837 (1999). "Evidence is material under *Brady* if there is a 'reasonable probability' that the result of the proceeding would have been different had the information been disclosed." *Riddle v. Ozmint*, 369 S.C. 39, 44-45, 631 S.E.2d 70, 73 (2006). A defendant asserting a *Brady* violation must show the State failed to disclose evidence, in its possession or known by the prosecution, that was favorable to the defendant as impeachment evidence or was material to the defendant's guilt or innocence. *Id*. at 44, 631 S.E.2d at 73.

Rule 5 of the South Carolina Rules of Criminal Procedure requires the State to make certain disclosures upon the defendant's request. Rule 5(d)(2), SCRCrimP, states that if the State fails to disclose material as required, "the court may order [the State] to permit the discovery or inspection, grant a continuance, or prohibit [the State] from introducing evidence not disclosed[] . . . ." For the court to prohibit the introduction of undisclosed evidence, a defendant must show he was prejudiced by the State's failure to comply with his discovery request. *See State v. Wilkins*, 310 S.C. 81, 84, 425 S.E.2d 68, 70 (Ct. App. 1992) ("[N]o constitutional violation . . . arises unless the failure [to disclose] 'is of sufficient significance to result in the denial of the defendant's right to a fair trial.'" (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976))).

At trial, Johnson objected to the State calling Dr. Susan Lamb as an expert witness. Johnson argued the State violated the discovery requirements under Rule 5, SCRCrimP, by not disclosing Dr. Lamb's CV and disclosing a relevant medical report only twenty minutes before Dr. Lamb was to testify. Rather than exclude Dr. Lamb's testimony, the trial court ordered the State to turn over a copy of Dr. Lamb's CV and granted Johnson a continuance. Johnson did not object to the trial court's ruling. Dr. Lamb later testified she had physically examined Child, as well as reviewed photos of Child's burns, and diagnosed Child as a victim of child abuse.

The State argues Johnson's *Brady* argument is not preserved for review because Johnson never raised the issue of a *Brady* violation to the trial court. We agree and find that, although Johnson argued the discovery violation was a "Rule 5 *Brady* violation," Johnson did not provide any substantive arguments as to the *Brady* disclosure rule, and the trial court based its ruling solely on Rule 5, SCRCrimP. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). As to the Rule 5 violation, we first find the trial court did not err in allowing the State to call Dr. Lamb as a witness because Johnson did not object when the trial court declined to exclude Dr. Lamb's testimony and instead granted Johnson a continuance to prepare for cross-examination. We also find the trial court's order for the State to provide Johnson with Dr. Lamb's CV and the grant of a continuance, which Johnson did not object to, remedied the discovery violation. Thus, the trial court did not err in allowing the State to call Dr. Lamb as a witness.

### III. Motions for Mistrial

Johnson argues the trial court erred in denying his motions for a mistrial because the State's expert witness testified, without proof, that Johnson burned Child "as a form of punishment . . . ," and the State referred to "discipline" after the court's curative instruction. We disagree.

"The decision to grant or deny a mistrial is within the sound discretion of the trial court." *State v. Harris*, 382 S.C. 107, 117, 674 S.E.2d 532, 537 (Ct. App. 2009). "The trial court's decision will not be overturned on appeal absent an abuse of discretion amounting to an error of law." *Id*. "The granting of a motion for a mistrial is an extreme measure that should only be taken if an incident is so grievous that the prejudicial effect can be removed in no other way." *Id*.

At trial, Johnson objected when Dr. Cartie, who treated Child at the Augusta Burn Center, testified, "[C]hild reported to me that he had been put into the shower and sprayed with hot water as a form of *punishment* . . . ." (Emphasis added.). Later, Johnson moved for a mistrial, arguing, "At this point, the jury has heard that word *discipline*,[1] which is why it needs to be struck, but we're moving for a mistrial at this point because I don't think that bell can be unrung." (Emphasis added.). The court denied the motion and gave a curative instruction informing the jury it should

---

[1] Dr. Cartie used the word "punishment," whereas Johnson's counsel used the word "discipline."

not consider the doctor's testimony that Johnson burned Child "as a form of *punishment*." (Emphasis added.). Johnson did not object to the curative instruction. He made a subsequent motion for a mistrial after the prosecutor twice stated Johnson tried to convince an investigator that he had not been angry at or trying to discipline Child. The trial court again denied the motion.

On appeal, Johnson asserts the trial court's curative instruction became meaningless when the prosecutor later suggested Johnson had tried to convince an investigator that he had not been disciplining Child when Child was burned. Johnson argues the prosecutor's repeated references to punishment and discipline tainted the trial such that it was necessary for the trial court to grant a mistrial.

As to Dr. Cartie's reference to a "punishment," we find the trial court properly cured any prejudice to Johnson by striking Dr. Cartie's testimony that Child was sprayed with hot water "as a form of punishment . . . ." *See State v. White*, 371 S.C. 439, 445, 639 S.E.2d 160, 163 (Ct. App. 2006) ("If the trial judge sustains a timely objection to evidence and gives the jury a curative instruction that it be disregarded, the error is deemed to have been cured by the instruction."); *State v. Walker*, 366 S.C. 643, 658, 623 S.E.2d 122, 129 (Ct. App. 2005) ("Generally, a curative instruction is deemed to have cured any alleged error.").

As to the prosecutor's use of the word "discipline," we find the issue is not preserved for our review because Johnson did not request a curative instruction, even after the court offered to give one. *See State v. Tucker*, 324 S.C. 155, 169, 478 S.E.2d 260, 267 (1996) (finding Appellant waived the issue because he refused the trial judge's offer of a curative instruction).

## IV. Directed Verdict

Johnson argues the trial court erred in finding there was sufficient evidence for the jury to find he acted with intent to cause great bodily harm to Child and denying his motion for a directed verdict. We disagree.

"On appeal from the denial of a directed verdict, this [c]ourt views the evidence and all reasonable inferences in the light most favorable to the State." *State v. Butler*, 407 S.C. 376, 381, 755 S.E.2d 457, 460 (2014). "If the [S]tate has presented 'any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused,' this [c]ourt must affirm the trial court's decision to submit the case to the jury." *State v. Hepburn*, 406 S.C. 416, 429, 753 S.E.2d 402, 409 (2013) (quoting *State v. Cherry*, 361 S.C. 588, 593-

94, 606 S.E.2d 475, 478 (2004)). "[An] appellate court may only reverse the trial court if there is no evidence to support the trial court's ruling." *State v. Gaster*, 349 S.C. 545, 555, 564 S.E.2d 87, 92 (2002).

Based on our review of the evidence and viewing all reasonable inferences in the light most favorable to the State, we find the State presented sufficient evidence for the jury to find Johnson intentionally burned Child, including both Child's testimony and Campbell's testimony that Johnson intended to put Child in the shower, as well as expert testimony that Child's burns were not self-inflicted and Child had been the victim of child abuse. Thus, we find the trial court did not err in denying Johnson's motion for a directed verdict.

## V.     Photographs

Johnson argues the trial court erred in admitting cumulative photographs of Child's burns. We disagree.

"The admissibility of evidence is within the sound discretion of the trial [court]." *State v. Mansfield*, 343 S.C. 66, 77, 538 S.E.2d 257, 263 (Ct. App. 2000). "Accordingly, evidentiary rulings of the trial court will not be reversed on appeal absent an abuse of discretion or the commission of legal error which results in prejudice to the defendant." *Id*.

At trial, the State sought to admit several photographs of Child's burns taken at the hospital. Johnson objected to the admission of three of the photographs as cumulative because they showed injuries that were already before the jury in the form of other exhibits. The court, however, found the photographs were not cumulative because they showed Child's burns from different angles and were necessary for the State to prove Child suffered great bodily injury.

We hold the trial court did not abuse its discretion in finding the three photographs were not cumulative because they showed Child's injuries from different angles and had probative value as to the State's burden to prove Child sustained great bodily injury.

## VI.    Jury Instruction

Johnson argues the trial court erred by refusing to instruct the jury (1) on accident because there was no evidence Johnson intentionally caused Child's injuries, and (2) that the great bodily injury statute required specific intent. We disagree.

"The law to be charged to the jury is to be determined by the evidence presented at trial." *State v. Lee*, 298 S.C. 362, 364, 380 S.E.2d 834, 835 (1989). "In reviewing jury charges for error, [the appellate court] considers the trial court's jury charge as a whole and in light of the evidence and issues presented at trial." *State v. Logan*, 405 S.C. 83, 90, 747 S.E.2d 444, 448 (2013). "A jury charge is correct if, when read as a whole, the charge adequately covers the law." *Id.* at 90-91, 747 S.E.2d at 448. "A jury charge that is substantially correct and covers the law does not require reversal." *Id.* at 90, 747 S.E.2d at 448. "Jury instructions should be considered as a whole, and if as a whole, they are free from error, any isolated portions which may be misleading do not constitute reversible error." *Id.* at 94 n.8, 747 S.E.2d at 449 n.8. "To warrant reversal, a trial [court]'s refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant." *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 583 (2010).

At trial, the court denied Johnson's request for a jury charge on specific intent because the court found section 16-3-95(A) of the South Carolina Code (2015) does not require the State to prove Johnson specifically intended for Child's burns to be as bad as they were. The court also declined to instruct the jury on accident, finding there was no evidence to support the theory that Johnson accidentally inflicted harm to Child.

We find the trial court did not err in not charging the jury with accident because the court instructed the jury on the defense of accident. We also find the trial court did not err in finding section 16-3-95(A) required general intent rather than specific intent. *See Mattison*, 388 S.C. at 479, 697 S.E.2d at 583 ("The trial court is required to charge only the current and correct law of South Carolina.").

**CONCLUSION**

Accordingly, Johnson's conviction for inflicting great bodily harm upon a child is

**AFFIRMED.[2]**

**SHORT, THOMAS, and GEATHERS, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.