# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner-Respondent,

v.

Charles Dent, Respondent-Petitioner.

Appellate Case No. 2021-001246

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Beaufort County
Alex Kinlaw Jr., Circuit Court Judge

---

Opinion No. 28172
Heard April 20, 2023 – Filed August 16, 2023

---

## REVERSED AND REMANDED

---

Attorney General Alan McCrory Wilson and Senior
Assistant Deputy Attorney General William M. Blitch
Jr., both of Columbia; and Isaac McDuffie Stone III, of
Bluffton, all for Petitioner-Respondent.

E. Charles Grose Jr., of The Grose Law Firm, LLC, of
Greenwood, for Respondent-Petitioner.

---

**JUSTICE KITTREDGE:** Charles Dent was convicted and sentenced on one count of first-degree criminal sexual conduct (CSC) with a minor and two counts of disseminating obscene material to a minor. Dent appealed, and a divided court of appeals' panel reversed and remanded for a new trial, finding the trial court erred in failing to give the requested circumstantial evidence charge this Court articulated in *State v. Logan*, 405 S.C. 83, 747 S.E.2d 444 (2013). *State v. Dent*, 434 S.C. 357, 863 S.E.2d 478 (Ct. App. 2021). Because this ruling was dispositive, the court of appeals did not reach Dent's other assignments of error. We granted the State's petition for a writ of certiorari and now reverse. While we agree with the court of appeals' finding of error in the trial court's failure to charge circumstantial evidence pursuant to *Logan*, the error was harmless. We reverse and remand to the court of appeals for consideration of Dent's remaining issues on appeal.

## I.

Dent's minor granddaughter (Granddaughter) accused Dent of sexually abusing her when she was eight and nine years old. Following her disclosure, Granddaughter underwent two forensic interviews. During the first forensic interview, Granddaughter revealed that one of the initial incidents of abuse occurred when Dent went to the bathroom, took lewd pictures of himself, and showed them to Granddaughter. Granddaughter told the forensic interviewer, "After he showed me all of his pictures—he took like ten of them— . . . he told me, 'Here, go take pictures of yours,' and I said, 'No!'" Granddaughter also detailed occasions when Dent would touch her vagina, breasts, and buttocks: "He was just touching me everywhere. He was kissing me on the mouth." Granddaughter stated Dent made her watch a pornographic video. Dent also took pictures of Granddaughter's vagina while she was asleep and later showed the pictures to Granddaughter.

In Granddaughter's second forensic interview, she wrote on a piece of paper: "He made me touch it more than once," indicating that her hand had touched Dent's penis. Granddaughter also wrote, "He made me lick it," and stated Dent's penis had gone inside her mouth on multiple occasions. Granddaughter disclosed that Dent touched her vagina with his mouth and that his hands went inside her vagina. Granddaughter described seeing Dent's "urine," which she recalled was "whiteish" in color, looked "like a flour mix," and stained the carpet. In both forensic interviews, Granddaughter stated Dent bribed her with money and toys. Dent was paying rent for the house

Granddaughter lived in, and he threatened that if Granddaughter reported the abuse, he would kick the family out of their home.

Dent was indicted for two counts of first-degree CSC with a minor and two counts of disseminating obscene material to a minor. At trial, the State presented mostly direct evidence against Dent. Granddaughter testified, "I remember he started kissing me, like, on my face, my mouth. He started licking my belly, like, my belly button and started, like touching me in weird places. And he took pictures of his private parts and told me to take pictures of mine." Granddaughter stated Dent touched her "private parts" and "made [her] lick his private parts." Granddaughter also testified that Dent showed her videos of "[p]eople having sex." In addition to Granddaughter's direct, in-court testimony, the trial court admitted videos of both forensic interviews into evidence, and the videos were published to the jury.

The State also presented circumstantial evidence at trial, including testimony from Granddaughter's mother and her mother's boyfriend concerning changes in Granddaughter's behavior around the time of the abuse.

At the end of trial, defense counsel requested a circumstantial evidence charge in accordance with *Logan*. *See Logan*, 405 S.C. at 99, 747 S.E.2d at 452 (providing language that trial courts should include in a circumstantial evidence charge when the charge is requested by a defendant). The State, to its credit, did not oppose the circumstantial evidence charge. The trial court, nevertheless, refused to provide the jury with the mandated *Logan* instruction. Dent noted his objection and, following the verdict, unsuccessfully moved for a new trial based in part on the *Logan* issue.

Dent subsequently appealed, raising eleven issues to the court of appeals. Finding the *Logan* issue dispositive, the court of appeals' majority declined to address Dent's remaining ten issues on appeal. The court of appeals held the trial court erred in not giving the full *Logan* charge and reversed and remanded for a new trial. Judge Thomas dissented. While Judge Thomas concurred with the finding of error in the trial court's failure to give the *Logan* charge, she pointed to the wealth of direct evidence and concluded "the error committed by the trial court was ultimately harmless." *Dent*, 434 S.C. at 364, 863 S.E.2d at 481 (Thomas, J., dissenting).

We granted the State's petition for a writ of certiorari to review the court of appeals' decision. The State argues the trial court's failure to give the entire *Logan* charge

was harmless error. Dent filed a cross-petition for a writ of certiorari, raising as additional sustaining grounds the ten issues the court of appeals declined to address. We held Dent's cross-petition in abeyance pending resolution of the State's petition.

## II.

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "When requested, the *Logan* charge must be given in cases based in whole or part on circumstantial evidence." *State v. Herndon*, 430 S.C. 367, 371, 845 S.E.2d 499, 501 (2020). Nevertheless, "[i]n reviewing jury charges for error, this Court considers the trial court's jury charge as a whole and in light of the evidence and issues presented at trial." *Logan*, 405 S.C. at 90, 747 S.E.2d at 448. "To warrant reversal, a trial [court's] refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant." *State v. Brandt*, 393 S.C. 526, 550, 713 S.E.2d 591, 603 (2011) (quoting *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 583 (2010)).

## III.

The parties concede the trial court erred in refusing to give the *Logan* circumstantial evidence charge following Dent's request. Therefore, the only issue before us is whether the trial court's failure to give the *Logan* charge was harmless. *See Herndon*, 430 S.C. at 373, 845 S.E.2d at 502 (acknowledging the failure to give a requested *Logan* charge is subject to a harmless error analysis); *State v. Burdette*, 427 S.C. 490, 496, 832 S.E.2d 575, 578 (2019) ("An erroneous instruction alone is insufficient to warrant this Court's reversal.").

"Harmless error analyses are fact-intensive inquiries and are not governed by a definite set of rules. Rather, appellate courts must determine the materiality and prejudicial character of the error in relation to the entire case." *State v. Jenkins*, 412 S.C. 643, 651, 773 S.E.2d 906, 909–10 (2015) (citations omitted). Our appellate courts have found a trial court's failure to give a requested *Logan* charge is prejudicial when the evidence against the defendant is almost entirely circumstantial. For example, in *Herndon*, this Court stated, "We acknowledge there may be a case in which a trial court's failure to give the *Logan* charge might be harmless error, but this is not such a case. The State's case against Petitioner was *almost exclusively circumstantial*." 430 S.C. at 373, 845 S.E.2d at 502 (emphasis added); *see also State*

*v. Sanchez*, 435 S.C. 468, 475–76, 867 S.E.2d 595, 598–99 (Ct. App. 2021) (finding the error prejudicial where, "[s]imilar to *Herndon*, the evidence of [the defendant's guilt] was largely circumstantial").

Here, the evidence was largely direct, especially Granddaughter's extensive testimony. *See* 30 S.C. Jur. *Evidence* § 154 (Supp. 2021–2022) ("'Direct evidence' is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness." (citation omitted)); *Logan*, 405 S.C. at 99, 747 S.E.2d at 452 ("Direct evidence directly proves the existence of a fact and does not require deduction."). Before the jury, Granddaughter directly named Dent as her abuser and detailed the sexual acts he perpetrated on her. The jury watched almost two hours of videotaped forensic interviews, during which Granddaughter recounted Dent's abuse over a two-year period. This was direct evidence.

It cannot be said that the evidence presented was almost entirely circumstantial. In discussing the nature of the evidence, the court of appeals' majority decision noted the absence of physical evidence of sexual abuse. We construe this finding as a comment on the issue of credibility, especially Granddaughter's credibility. *See Herndon*, 430 S.C. at 373 n.6, 845 S.E.2d at 502 n.6 ("Fundamental to a jury's role as fact-finder is making credibility determinations, which lie in the sole province of the jury."). Whether Granddaughter's testimony was credible is an entirely distinct issue from whether direct evidence existed. The fact that the State also utilized circumstantial evidence does not detract from the existence of direct evidence. The State recognized the importance of the direct evidence, highlighting Granddaughter's trial testimony and two forensic interviews in its initial closing argument.

Moreover, we agree with the State that the trial court's instruction, as a whole, accurately charged the law to be applied. Our appellate courts have previously held the failure to give the *Logan* charge was harmless error where "[t]he trial court's jury instruction, as a whole, properly conveyed the applicable law." *Logan*, 405 S.C. at 94 n.8, 747 S.E.2d at 449 n.8; *see also State v. Jenkins*, 408 S.C. 560, 573, 759 S.E.2d 759, 766 (Ct. App. 2014) (holding "any error in the omission of other language from the *Logan* instruction was harmless beyond a reasonable doubt because the trial court's instruction, as a whole, properly conveyed the applicable law"); *State v. Drayton*, 411 S.C. 533, 546, 769 S.E.2d 254, 261 (Ct. App. 2015) (same), *aff'd in result and vacated in part on other grounds*, 415 S.C. 43, 780 S.E.2d

902 (2015); *State v. Lynch*, 412 S.C. 156, 178, 771 S.E.2d 346, 357–58 (Ct. App. 2015) (same).

Other than the error in failing to give the *Logan* circumstantial evidence charge, the trial court thoroughly and properly charged the jury on the law, including the presumption of innocence, burden of proof, and reasonable doubt. As a result, in light of the trial court's charge as a whole and in light of the direct evidence, we hold the trial court's failure to give the requested *Logan* charge was harmless error. We reverse the court of appeals' opinion and remand this matter for the court of appeals to address Dent's remaining issues on appeal.

**REVERSED AND REMANDED.**

**BEATTY, C.J., FEW, JAMES, JJ., and Acting Justice Jan B. Bromell Holmes, concur.**